# <u>Statutes of the Student Government Association, Inc.</u>



**Saunders-Dittimus Administration**
**Fall 2019**

STATUTES OF THE STUDENT GOVERNMENT ASSOCIATION
OF
MONTCLAIR STATE UNIVERSITY INCORPORATED

## TABLE OF CONTENTS

**ARTICLE ONE: STRUCTURE OF THE LEGISLATURE**

LEGISLATIVE REPRESENTATION……………………….………......**6**

DUTIES OF LEGISLATIVE REPRESENTATIVES……..……………..**7**

COMMITTEES……………………....……………………..…………..**8**

STANDING COMMITTEES…………………………………………**10**

AD HOC COMMITTEES…………………………………………**14**

**ARTICLE TWO: HOUSE RULES OF THE LEGISLATURE**

PROCEDURE FOR LAWS……………………………………..…….**15**

CONSTITUTIONALITY OF BILLS………...…………………….…**16**

APPROVAL OF BILLS BY THE SGA PRESIDENT…………….....**16**

FILING OF BILLS…………………………………………………**17**

MEETINGS……………………………………………………….**17**

PRESIDENT PRO TEMPORE OF THE LEGISLATURE………..…….**20**

ABSENCES…………………………………………………...………**22**

RECOGNITION OF EXECUTIVE BRANCH...………………….……**23**

APPROVAL OF BILLS BY THE JUDICIAL BRANCH…………..……**23**

SGA CLERK…………………....…………………………..……...**24**

SGA FINANCIAL CLERK………………………………………..**24**

**ARTICLE THREE: THE EXECUTIVE**

EXECUTIVE OFFICERS: DUTIES AND RESPONSIBILITIES……….**25**

THE ATTORNEY GENERAL……………………………….……….**29**

CHIEF OF STAFF…………………………………………………......**30**

THE CABINET…...…………………………………………….…....**31**

THE SGA PROGRAMMING BOARD……………………….…..….**37**

THE YEARBOOK TEAM...........................................................……...**40**

LEADERSHIP RETREAT……………………………………….**41**

## ARTICLE FOUR: ELECTIONS

SCHEDULE………………………………………….….…..**42**

PETITIONS……………………………………………..….**44**

UTILIZING AN ONLINE VOTING SYSTEM………………….......**44**

ELECTION COMMISSIONERS…………………………….……..**45**

## ARTICLE FIVE: CHARTERING OF ORGANIZATIONS & PROGRAMMING

CLASSIFICATION OF ORGANIZATIONS…………….……………**46**

THE CHARTERING PROCESS………………….…..................……**48**

MEETINGS AND MINUTES…....………………………………**50**

CHARTER REVISIONS…………………………………**51**

PROGRAMMING………………………………………**51**

ADVERTISING POLICY………...……………………………**52**

MONTHLY MEETINGS.................................................................**52**

ORGANIZATION SEMESTER REPORTS...........................................**52**

## ARTICLE SIX: FINANCIAL POLICIES

CORPORATE AND BUDGETARY POLICY…...………….............**53**

APPROPRIATIONS………………………………………...…...……**60**

STUDENT FEES………………………………………...…………**63**

CHECK SIGNING………………………………….………….**64**

OUTSTANDING CHECKS………………………………...……....**64**

**ARTICLE SEVEN: STUDENTS MEMBERS ON THE BOARD OF TRUSTEES OF MSU**

ELIGIBILITY, ELECTION AND TERM OF OFFICE……………......…**64**

DUTIES AND RESPONSIBILITIES…………………………..….…**65**

MEMBERS' RELATIONSHIP TO THE SGA…………………….…**66**

OVERSIGHT AND RESTRICTION…………………………………....**66**

**ARTICLE EIGHT: JUDICIAL BRANCH**

GENERAL……………………………………………..….……...**67**

JUDICIAL BRANCH ELECTION PROCEDURES.……………………**67**

DUTIES OF THE JUSTICES……………………………….…….**67**

CHIEF JUSTICE.............................................................................**68**

ABSENCES………………………………………………..….……**69**

JUDICIAL COURT.................................…...............…..…....…**69**

THE OFFICE OF THE STUDENT ADVOCATE..………………….....**70**

**ARTICLE NINE: SGA ADVISORS DUTIES & RESPONSIBILITIES**

FINANCIAL ADVISOR………………………………....……….**72**

ADMINISTRATIVE/FACULTY ADVISOR……………......…….......**72**

**ARTICLE TEN: CODE OF ETHICS**

PURPOSE………………………………………….……………..**73**

STATE OF POLICY……………………………………...…..……**73**

DEFINITIONS………………………………………………….....**74**

CODE OF CONDUCT…………………………………...…….…**75**

OTHER STATUTES AND RULES....……………………….…….……...**79**

**ARTICLE ELEVEN: DISCIPLINARY PROCEDURES**

PRE-TRIAL HEARING…………………………………………………………**80**

DISCIPLINARY COMMITTEE..……………………………………………...**80**

TRIAL HEARING...………………………………………………….…...**81**

APPELLATE HEARING…………………………………………………**82**

DISCIPLINARY GUIDELINES FOR CLASS ORGANIZATIONS...…...**82**

STATUTES OF THE STUDENT GOVERNMENT ASSOCIATION
OF
MONTCLAIR STATE UNIVERSITY INCORPORATED

## GENERAL

**A table of contents must be provided at the beginning of the Statutes.  Pages should also be numbered. These statutes shall prevail over the precedence set by any previous acts of Legislature.**

## ARTICLE ONE

## STRUCTURE OF THE LEGISLATURE

## SECTION ONE:  LEGISLATIVE REPRESENTATION

**A.  General Requirements**

1.  The Legislature shall not exceed sixty-five people.

2.  Legislative vacancies shall be filled using a petition process that contains 150 signatures.

3.  Seats shall be filled on a first return-first seated basis. After these seats are filled, rolling admission shall be implemented thereafter.

4.  Legislative vacancies may only be filled by appointment by the SGA President Pro Tempore and President of the Legislature. The President of the Legislature may appoint representatives before the President Pro Tempore is elected.

    a.  The appointments must follow the same petition process containing 150 signatures.

    b.  The petition must be completed before approval of the appointment by the Legislature may take place.

    c.  All appointments must be approved by a majority vote of the Legislature.

5.  The President of the Legislature shall inform the SGA President of any appointments to the Legislature.  The SGA President shall swear in all appointments within two weeks of being informed by the President of the Legislature. The Chief Justice or Attorney General may swear in legislative appointments with the approval of the SGA President.

**B.  At Large Representative(s)**

1.  At large representative(s) will represent no specific constituency, but shall serve all

undergraduate students collectively.

## C. Academic Affairs Representative(s)

1. One individual wishing to represent a particular school or college (College of Education and Human Services, College of Humanities and Social Sciences, College of Science and Mathematics, College of the Arts and School of Business) on campus shall:

   a. Be an enrolled undergraduate of said School or College.

   b. Submit a petition of 150 signatures, at least 50 of which must be of undergraduates enrolled in said school or college to the respective Dean for approval.

2. Be selected and endorsed by the respective Dean of said school or college through a process to be determined by the respective Dean's Office.

3. The SGA Vice-President shall be responsible to check the enrollment of the departments in accordance with the Dean of Students office.

## D. Freshman Representative(s)

1. Five At-Large seats shall be reserved for first semester freshmen during the first month of the fall semester.  If not filled by freshmen, these seats shall be made available to the rest of the applicants.

2. Freshman Representative(s) shall represent the views and concerns of the freshman class.

## E. Class Representative(s)

1. Organizations may send one representative to the legislature, with the advice and consent of 2/3 of the organization's voting members. Class One organizations must send one representative. The following procedures must be adhered to in order to swear in a Class representative.

   a. The appointed shall meet all necessary requirements outlined in Article 1, Section One except for the 150-signature requirement.

   b. The appointed shall not already be a Presidential Cabinet Member, Executive Board, or a Board of Trustee Representative.

   c. Upon swearing in, the newly appointed Legislator is required to fulfill the same duties as an at-large Legislator.

## SECTION TWO:  <u>DUTIES OF LEGISLATIVE REPRESENTATIVES</u>

**A. General:**

1. Shall establish effective means of communication with their constituency.

2. Shall perform all such other duties required by the Constitution and Statutes as well as those other duties generally associated with the office.

3. Shall serve on at least two SGA Standing Committees.

    i. In the event that a Legislator cannot serve on any or one committee than they must serve one office hour for every committee missed.

4. Shall submit class schedule to the President Pro-Tempore at the beginning of each semester if there is a class conflict.

5. Shall be present for the entirety of all meetings of the legislature unless excused by the President Pro-Tempore at the beginning of the semester due to class conflict. In the event of any other extenuating circumstances that would cause the representative to miss part of the meeting on a regular basis, they must inform the Executive Vice President at the beginning of the semester and receive permission from them to leave early/come late.

6. If, for some reason, a representative has to miss part of the legislative meeting on a particular day, they must inform the President Pro-Tempore at least 24 hours prior to commencement of the meeting.

**B. Academic Affairs Representative(s)**

1. Shall meet with the Dean of the respective school or college on a monthly basis to address the needs of the specific student population.

2. May represent organizations that fall under said school or college.

3. Must be in the Academic Affairs Committee.

    a. The representative may be pardoned by the Vice-President if they have a conflict due to class or work.

**SECTION THREE:  COMMITTEES**

**A. General**

1. Each representative will sit on at least two committees and will decide and announce their committee choice to the President Pro-Tempore no later than the third meeting after the beginning of the semester or the filling of the vacancy.

2. A secretary shall be elected by the committee to take accurate accounts of their committee's attendance and inform the President Pro Tempore and the Executive Vice President of its status

3. Any student-at-large wishing to be a member of any committee may obtain ex-officio status as prescribed by the Executive Vice President.

4. Ex-officio members:

   a. An Executive Board member, or designee, may be an ex-officio member of their respective standing committee.

   b. Executive Presidential Cabinet members may be ex-officio members to their respective committees outlined in Article Three.

   c. An ex-officio shall be known as a non-voting member, with such privileged title on account of their knowledge in that particular committee.

   d. The committee's direction of legislative business and voting power shall be vested in its Legislator(s).

5. All standing committees shall meet at a definite time each week, as specified by the members of the committee at the beginning of each semester.

6. No two committees shall meet on the same day at the same time.

7. Each committee shall investigate all areas of campus life as outlined by said committee's description.

8. Each committee shall meet once a week, unless specified otherwise.

**B. Duties of the Chairperson**

1. Shall coordinate the activities of their respective committees.

2. Shall schedule all meetings and hearings of the committee.

3. Shall chair all meetings.

4. Shall report all findings and recommendations to the Legislature.

5. Shall perform all duties inherent to the office of the chairperson.

6. Shall attend all committee chairperson meetings as set by the Executive Vice President

7. Failure to attend a Committee Chair meeting without the consent of the Executive Vice President will result in an unexcused legislative absence.

8. At the close of each semester, all committee chairs must submit a written report to the

Executive Vice President, detailing projects worked on, legislation deliberated, and enumerating goals for the coming semester.

## C. Duties of the Committee Secretary

1. Shall keep and post all records of the deliberations of the committee and shall forward copies of the same to the Executive Secretary within a week of the committee meeting.

2. Shall serve as Chairperson in the event of the regular Chairperson's absence.

3. Shall keep accurate accounts of their committee's attendance and inform the President Pro Tempore of its status.

4. Shall perform all duties inherent to the office of the Executive Secretary.

## D. Guidelines for Membership Voting on Committees

1. Any legislator of the SGA may vote on any standing committee, that has met the attendance requirements of their respective committee.

   a. In order to gain voting privileges any member must attend one committee meeting prior and may not accumulate more than three absences in a semester.

   b. With the exception of the initial two-committee meetings of the semester, any eligible SGA legislator may vote without restrictions.

2. All standing committees shall be responsible for the carrying out of any specific projects authorized by the Legislature within their area of jurisdiction.

## E. Committee Chair Meetings

1. Shall be chaired by the Executive Vice President.

2. Shall consist of all Committee Chairs.

3. Shall discuss committee projects.

4. Shall initiate committee projects in bill form to be placed in the appropriate committee.

5. Failure to attend Committee Chair meetings without the consent of the Executive Vice President will result in an unexcused legislative absence.

## SECTION FOUR:  <u>STANDING COMMITTEES</u>

## A. Appropriations Committee

1. Shall review and hold open hearings, as is necessary, on financial bills to be presented to the

Legislature and formulate recommendations for the Legislature.

2. Shall act as the formal channel for all-financial bills, budgets, line transfers, and requests to come out of Unappropriated Surplus.

3. Shall consider bills concerning gifts of money to any charity.

4. Shall review all Class One budgets annually in the Spring Semester and make recommendations to the Legislature.

5. Shall also recommend action on any bill involved with bus authorization trips.

6. Shall have the SGA Treasurer as an ex-officio member.

7. Shall be chaired by the SGA Financial Clerk

**B. Organizational Review Committee**

1. The purpose of the Organizational Review Committee is to review the constitution of any organization that wishes to become an SGA chartered organization or renew their current SGA charter. This would include examining the organization based on evaluation criteria found in Article V.

2. Shall review Class One organizations charters and constitutions in the spring semester and recommend to the Legislature the constitutionality of the respective organization's charters and constitutions and the continuing fulfillment of their purpose.

3. Shall have the ability to review Class I, II, III & IV constitutions.

4. Shall notify each organization and allow attendance at such review by any interested students.

5. Shall be present and complete all reviews and changes before any scheduled date for discussion of the respective Class One Organization's budget by either the Appropriations Committee or the Legislature as a whole.

6. Shall be chaired by the President Pro Tempore.

7. Shall have the Attorney General and Chief Justice as Ex-Officio Members.

8. Organizational Review Committee must have a minimum of five voting members, of who must be SGA Legislators, sitting and present to conduct any business of which the majority of Legislature may not be official members of any organization the committee is reviewing.

9. Shall review all decharterment bills.

10. Shall have the ability to request funds from Unappropriated Surplus in order  to carry out its

activities.

**C. Government & Administration Committee**

1. Shall administer special elections as prescribed by Article IV of the Statutes.

2. Shall constantly review the operations of the SGA.

3. Shall review any Statute changes and make recommendations to the Legislature.

4. Shall review all appointments while the legislature is in session and make recommendations to the Legislature.

5. Shall act as a direct liaison between the University's Coordinator for Civic and Voter Engagement and the SGA.

6. Shall have the SGA Attorney General as an ex-officio member.

**D. Student Affairs Committee**

1. Shall examine the needs of all students of the University and make recommendations based on such. Areas of concern should include, but not be limited to, academic, residential, commuter, student safety and welfare, and parking.

2. Shall coordinate and review nominations for the Excellence in Education Award.

3. Director of Academic Affairs, Director of Student Affairs, Director of Equity and Diversity shall have the privilege of acting as ex-officio members of this committee.

4. Shall have the ability to request funds from Unappropriated Surplus in order to carry out its activities.

**E. Marketing & Publicity Committee**

1. Shall create/review legislative action that:

   a. Involves promotion of the SGA and shall act upon such means of publicity, advertising, etc.

   b. Concerns national, state or local affairs and consider SGA, Inc. membership in any outside organization.

   c. Involves collaboration or advocacy between the SGA, Inc. and any recognized University Athletic team or recreational board.

   d. Collaboration between the SGA, Inc. and the University recognized student events and productions.

2. Shall review and produce such legislation so that, through a positive collaboration with the

SGA, students can actively participate in recognition of such non-SGA campus teams, boards, happenings, etc.

**3.** The Executive Secretary and the Director of Media shall have the privilege of acting as ex-officio members.

**4.** Executive Presidential Cabinet members not listed herein may have the privilege of acting as ex-officio members, if subject matter pertains to their scope.  Such privilege will be at the discretion of the Presidential Cabinet members and the SGA President and subject to the approval of the committee.

**F.  Academic Affairs Committee**

    **1.**  Shall create/review legislative action that:

        **a.**  Addresses the needs of students pertaining to academics.

        **b.**  Involves collaboration or advocacy between the SGA, Inc. and any recognized University Academic Department.

        **c.**  Examine the academic needs of specific schools and colleges of the University and make recommendations based on such.

    **2**. Shall have the ability to request funds from Unappropriated Surplus in order to carry out its activities.

**G. The Food Service Advisory Committee**

    1.  Hear and evaluate student concerns regarding the University's food service.

    2.  Bring these concerns to the attention of the Food Services management and work with the food service to address those concerns and improve the quality of campus life as affected by the food service.

    3.  Work, through its own initiative, to improve the quality of the University Food Service.

    4.  Shall be governed by the student affairs committee if there are not enough members for the committee to function.

    5.  The chair of the committee shall meet with the Manager of Dining Services on a monthly basis.

    6.  Shall be open to the entire campus community.

    7.  Shall meet once a week.

    8.  Shall have the ability to request funds from Unappropriated Surplus in order to carry out its

activities.

**H. The Equity and Diversity Committee**

1. Examine the needs of all students of the university and make recommendations based on the following areas of concern; cultural and identity issues, herein defined as but not limited to, matters of gender, race ethnicity, religion, socio-economic class, age, sexual orientation, or political philosophy.

2. Take active commitment to resolving issues of the above subject and inform the Executive and Legislative Branches of such issues as needed.

3. Consist of at least three Legislators.

4. Be open to any undergraduates who, after attending two consecutive meetings, may vote on issues to be released from committee.

5. Director of Equity and Diversity shall have the privilege of acting as an ex-officio member of this committee.

6. The Women's Center, Center for Non-Violence, CSI, Lesbian, Gay, Bisexual, Transgender, Queer Center (LGBTQ) and the Disability Resource Center, shall have the privilege of sending one representative each to act as ex-officio members.

7. Hear, evaluate, and address student concerns regarding any racial or ethnic issues or problems on campus.

8. Take actions to facilitate a greater sense of multicultural awareness, harmony, and understanding in the campus community.

9. Work with other campus groups to achieve the goal of the committee.

   a. This committee shall be set up no later than the third meeting of the semester.

10. Shall be governed by the student affairs committee if there are not enough members for the committee to function.

11. Shall meet at least once per month.

12. Shall have the ability to request funds from Unappropriated Surplus in order to carry out its activities.

**SECTION FIVE:  AD HOC COMMITTEES**

**A.  General**

1. The Legislature may form an Ad Hoc Committee, by a 2/3-majority vote, to discuss bills or issues outside the normal realm of the existing standing committees.

   a. A chairperson will be approved by the Legislature.

2. A time limit will be set on any such committee at the time of formation.

3. The committee shall make a written report of their findings, within that specified time to the Legislature.

4. The Chair and Secretary of the Ad Hoc committee must be associated with the legislative or judicial branch.

5. Shall have the ability to request funds from Unappropriated Surplus in order to carry out its activities.

**ARTICLE TWO**

**HOUSE RULES OF THE LEGISLATURE**

**SECTION ONE:  PROCEDURE FOR LAWS**

**A. General**

1. Any member of the Legislature as well as the Executive President may author a bill.

2. All bills (e.g. Financial, Policy Statements, Chartering Procedures) shall be written as follows:

   *"BE IT ENACTED BY THE LEGISLATURE OF THE STUDENT GOVERNMENT ASSOCIATION OF MONTCLAIR STATE UNIVERSITY INCORPORATED, THAT…"*

3. The author of the bill must submit the bill in its proper form to the President of the Legislature no later than 4pm Monday prior to the meeting of the Legislature at which time the bill is to be introduced:

   a. All guidelines for chartering shall be adhered to as per Article 5, and subsequent executive policies.

   b. All guidelines for financial bills shall be adhered to as per Article 6 and subsequent executive policies.

   c. All guidelines for charter renewals shall be adhered to as per Article 5, Section 2, subsection E.

4. The President Pro-Tempore shall appropriately number and register the bill.

5. The President Pro-Tempore shall make available a copy of the bill to public.

**6.** The President of the Legislature may then place the bill in committee for investigation.

    **a.** The bill may skip committee at the request of the Legislature and the advice and consent of the SGA Attorney General.

**7.** The bill shall be returned from the committee with its recommendations and/or advice at the next meeting or shall give a progress report.

    **a.** The SGA Clerk shall read the bill one time.

    **b.** The Chairperson shall report the findings of the committee.

    **c.** The sponsor or their designee then has the right to address the Legislature concerning the proposed bill as introduction to general discussion and debate.

    **d.** The way is then clear for general discussion and the Legislature shall act upon the bill.

**8.** Any representative may enter a motion to discharge a committee from further consideration of a bill by which the committee has failed to report progress.

    **a.** In order to discharge committee there must be a 3/4th majority vote of the Legislature.

    **b.** A motion to discharge committee is only in effect for the bill in which it was motioned upon.

**9.** If a representative is unable to post the bill in time to be considered at the next meeting and that representative  feels that it is of an emergency nature, that representative may present it to the President of the Legislature prior to the meeting. The President of the Legislature gives it a number if it is of sufficient need to be considered immediately. The President of the Legislature reports it to the Legislature before New Business.

**10.** All statute bills shall go into effect the day following the semester the bill became law.

## SECTION TWO:  CONSTITUTIONALITY OF BILLS

**1.** The Attorney General shall determine the constitutionality of any bill.  A ruling of unconstitutionality by the review may be overridden by a three-fourths vote of the Legislature to ensure constitutionality of SGA, Inc. following the order set forth in Article II, Section Nine.

## SECTION THREE:  APPROVAL OF BILLS BY THE SGA PRESIDENT

**1.** In the name of the President of the Legislature, the President Pro-Tempore shall transmit accurate copies of all bills passed by the Legislature to the SGA Judicial Branch before the next Justice meeting.

2. After being passed by the Legislature, a bill shall become law upon signature of the SGA President or upon failure of the SGA President to act within fourteen days, or by the end of the semester.

## SECTION FOUR:  FILING OF BILLS

**A.** The President Pro-Tempore and the Office Administrator  shall keep a file of all Legislative bills in numerical order. This bill shall also indicate the semester in which the bill was submitted.  Each bill shall have attached to it:

1. A statement by the President Pro-Tempore attesting to the Legislative sponsor, the date of the first reading.

2. The date of passage by the Legislature.

3. The committee which acted upon the bill.

4. Either a statement signed by the SGA President, of approval or of veto, or a statement by the President Pro-Tempore to the effect that the SGA President had failed to act within fourteen days, or that the veto had been overridden by a three-fourths vote.

## SECTION FIVE:  MEETINGS

**A. General Meetings**

1. Each Legislative session shall meet on Wednesday at 3pm at a permanent location determined at the first meeting of the fall semester.  A temporary exception may be made if the administrator or director of those location's grounds has deemed that area to be unsafe due to an emergency situation and pending legislative approval by a majority of votes.

2. The weekly agenda for legislative meetings shall be made available by twelve noon the day before the meeting is to take place.

3. All Legislators must submit their class schedule to the President Pro-Tempore at the beginning of each semester if there is a recurring class conflict with the SGA meeting. As well as submit an updated schedule should changes occur after their initial submission.

4. All Legislators shall be present for the entirety of all meetings of the Legislature unless excused by the President Pro-Tempore at the beginning of the semester due to class conflict. In the event of any other extenuating circumstances that would cause the representative to miss part of the meeting, they must inform the President Pro-Tempore before the commencement of the meeting

and receive permission from the President of the Legislature to leave early/arrive late.

**B. Executive Session**

    **1.** Procedure for the Legislature to declare and move into an Executive Session:

        **a.** Executive session must be announced on an agenda at least 24 hours prior to the going into of an executive session.

           **i.** Upon the affirmative vote of a majority of the legislators present, they may go into an executive session notwithstanding the failure to provide adequate notice if:

           **ii.** Such meeting is required in order to deal with matters of such urgency and importance that a delay for the purpose of providing adequate notice would be likely to result in substantial harm to the interest of the Student Government; and

           **iii.** The executive session is limited to discussion of and acting with respect to such matters of urgency and importance; and

           **iv.** Notice of such meeting is provided as soon as possible following the calling of such meeting by posting written notice in the SGA Office and e-mail notification to all Legislators or phone calls if possible.

           **v.** Either (a) the Legislature could not reasonably have foreseen the need for such meeting at a time when adequate notice could have been provided; or (b) although the Legislature could reasonably have foreseen the need for such meeting at a time when adequate notice could have been provided, it nevertheless failed to do so.

        **b.** The topic to be discussed in executive session must be announced by the individual who motions to go into the executive session, before the Legislature moves into said session. The Legislature may only discuss such business in executive session as was announced prior to the moving into of said session.

        **c.** Presence in an Executive Session is limited to SGA Legislature, SGA Executive Board, Presidential Cabinet Members, SGA Attorney General, SGA Chief Justice and SGA Administrative Advisor.

           **i.** Any member of the Legislature may verbally petition the chair for allowances to Article 2, Section 5, Letter D, Number 3. Such petition requires a ¾ majority vote of the SGA Legislature.

d.  All regular meetings of the SGA Legislature shall be open to all SGA members, except those meetings where the circumstances would clearly endanger the interest of the members of the SGA or the personal privacy or guaranteed rights of individuals would be clearly in danger of unwarranted invasion or disclosure. The Legislature may move into an executive session to discuss:

   i.  Any matter which, by provision of Federal law, State statute, or rule of court shall be rendered confidential.

   ii.  Any material the disclosure of which constitutes an unwarranted invasion of individual privacy such as any records, data, reports, recommendations, or other personal material of any educational, training, social service, medical, health, custodial, child protection, rehabilitation, legal defense, welfare, housing, relocation, insurance or similar program or institution operated by a public body or the SGA pertaining to any specific individual admitted to or served by such institution or program, including but not limited to information relative to the individual's personal and family circumstances, and any material pertaining to admission, discharge, treatment, progress or condition of any individual, unless the individual concerned (or, in the case of a minor or incompetent, their guardian) shall request in writing that the same be disclosed at said SGA meeting. The selection of representatives to serve as jurors for an SGA Judicial review shall be kept confidential and the legislature may make these selections in an executive session.

   iii.  Any collective bargaining agreement, or the terms and conditions which are proposed for inclusion in any collective bargaining agreement, including the negotiation of the terms and conditions thereof with employees or representatives of employees of the SGA.

   iv.  Any matter involving the purchase, lease or acquisition of real property with SGA funds, or investment of SGA funds, where it could adversely affect the SGA members' interest if discussion of such matters were disclosed.

   v.  Any tactics and techniques utilized in protecting the safety and property of the SGA or its members, provided that their disclosure could impair such protection or any investigations of violations or possible violations of the law (Criminal, Civil,

University, or SGA).

    **vi.** Any pending or anticipated litigation or contract negotiation in which the SGA is, or may become a party or any matters falling within the attorney-client privilege, to the extent that confidentiality is required in order for the attorney to exercise their ethical duties as a lawyer.

    **vii.** Any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion or disciplining of any specific prospective officer or employee or current officer or employee employed or appointed by the SGA Legislature or elected by the SGA members, unless all the individual employees or appointees whose rights could be adversely affected request in writing that such matter or matters be discussed at a regular SGA meeting.

    **viii.** Any deliberations of the SGA occurring after a hearing that may result in the imposition of a specific penalty upon the responding party or the suspension or loss of a charter or belonging to the responding party as a result of an act or omission for which the responding party bears responsibility.

## C. Executive Session Minutes

1. The House Rules of the SGA Legislature shall be to take minutes during an executive session. When minutes are taken during an executive session of the legislature, they will be made available to all the members of the SGA after said discussion material in the minutes is no longer of a sensitive nature.  Any confidential information contained in an executive session's minutes shall be blacked out or deleted before said minutes are made available to all the SGA members.  For an executive session to select jury members minutes will be made available after said trial or review board in which said jury members were a part of has ended.  For a situation arising under Article Two, Section Five, Letter B, said minutes will be released after such time when release of said information shall no longer impair protection or said investigation.

2. Minutes taken in an executive session must be approved in another executive session before being released. At this time, remaining confidential information shall be "blacked out".  i.e. personal, sensitive information, etc.

**SECTION SIX:  PRESIDENT PRO TEMPORE OF THE LEGISLATURE**

1. The Legislature shall elect from among its membership a President Pro Tempore based on Part N of the Constitution, who shall serve as President of the Legislature in the absence of the Executive Vice President.

2. The nominations for this position will take place at the second meeting of the Fall Legislative session, with the election being held at the third meeting of the Fall Legislative session.  The winner shall be determined by a majority of the votes cast.  If the position of President Pro Tempore is vacated, then an election to fill the position shall take place at the next regular meeting.

3. The President Pro Tempore shall serve as chairperson of the Organizational Review Committee and act as the liaison of the Legislature to the Executive Board, and Judicial Branch.

4. Any candidate running for the position of President Pro Tempore of the Legislature must have completed a Legislative Petition by the first meeting of the fall semester.

5. The President Pro Tempore must not have a conflict and must be present for the entirety of all Legislative meetings. If a regular conflict arises, the President Pro Tempore must resign from the position. In the event that the individual refuses to resign, the Executive Vice President along with the Attorney General may start removal proceedings by submitting a written letter to the President Pro Tempore, Chief Justice and the SGA President.

6. In the event that the President Pro Tempore must be absent, the President of the Legislature will appoint a temporary President Pro Tempore for that meeting with the advice and consent of 2/3 of the Legislature.

7. The President Pro Tempore of the Legislature shall, at all times, have access to all organizational paperwork, including (re) charter packets/contact information, constitutions and charter certificates.

8. The President Pro Tempore may not hold an Executive Board position of any SGA Chartered Organization.

9. Shall be required to work a minimum of 5 office hours per week in accordance with Article Three, Section One, Letter F.

**SECTION SEVEN:  ABSENCES**

**A. General**

 **1.** To assure each student of the University is represented in the SGA by their representatives, Legislators are not:

  a. Permitted to have more than two unexcused absences during each semester.

 **2.** Upon accumulation of two unexcused absences from general SGA meetings, the President Pro Tempore shall send a warning letter to that representative.

 **3.** Upon the third absence, the President Pro Tempore shall send a letter of removal to that representative.

 **4.** Any action taken under the auspices of this section may be appealed to the Legislature and over-ridden by a 2/3-majority vote.  The appeal must be presented within two official meeting(s) of the Legislature after the action was instituted.

 **5.** In the event that a representative has a registered class for a portion of the meeting, they will be required to gain permission from the President Pro-Tempore  to leave early at the beginning of the semester.

**B. Proxy**

 **1.** Each Legislator may yield their seat by proxy to any eligible fee-paying undergraduate upon written notification to the President Pro-Tempore.

 **2.** The President Pro-Tempore must receive this notification, no later than twenty-four hours prior to the Wednesday meeting.

 **3.** This right to proxy shall be limited to one utilization per semester.

 **4.** If a proxy is utilized, the Legislator will not be marked as absent.

 **5.** Legislative Proxies shall be non-voting members of the legislative body.

**C. Committee Absences**

 **1.** A representative member is permitted four absences from their Primary Committee during a semester.

  **a.** The accumulation of two Primary committee absences shall result in one unexcused Legislative absence.

  **b.** The accumulation of four Primary committee absences shall result in a second unexcused Legislative absence.

   **c.** The accumulation of six Primary committee absences shall result in removal from the committee and the Legislature.

**2.** The committee secretary will be responsible for informing the President Pro Tempore of their committee's status.

**3.** If a legislator does not identify and attend their Primary committee's meeting within the first two weeks of that committee's formation, that legislator will receive two unexcused Legislative Absences.

**4.** If a legislator does not identify and attend their Primary committees meeting within the first four weeks of that committee's formation, that legislator will be removed from the Legislature.

**5.** Any legislator sworn in during or after the third legislative week has a two week grace period to join a committee.  After those two weeks have passed, if that legislator does not identify and attend their Primary committee's meeting they will receive two unexcused Legislative Absences.  If that legislator does not attend their Primary committee's meeting two weeks after receiving the two-absence policy, that legislator will be removed from the Legislature.

## SECTION EIGHT:  RECOGNITION OF EXECUTIVE BRANCH

**1.** SGA Executive officers, Presidential Cabinet members, and Justices specifically designated to represent the Executive and Judicial Branch on specific legislation shall be afforded the right to be recognized in the Legislature as well as to raise "Points of Information" and "Points of Personal Privilege."

## SECTION NINE:  APPROVAL OF BILLS BY THE JUDICIAL BRANCH

**1.** All bills passed by the Legislature must be forwarded to the Justice Clerk in the name of the President of the Legislature, before the next business day.

**2.** The Justices then have the right to call for a judicial review of any bill they feel to be unconstitutional.

**3.** If there is no review made within one week's time of receiving the bill, the bill is assumed to be constitutional and fit for signing by the Student Government Association President.

**4.** As afforded in the Constitution, the Justices have the right to examine all Statute revisions and organization's by-laws and constitutions.

**5.** Judicial reviews can be called on any bill, or law, at anytime.

6. If a review finds a violation, then the reasons must be outlined in writing.

7. A ruling of unconstitutionality by the review may be overridden by a 3/4 vote of the Legislature.

## SECTION TEN:  SGA CLERK

1. The SGA Executive Secretary shall recommend to the SGA President a candidate for the position of SGA Clerk and the nomination will be presented to the Legislature in bill form no later than the third general meeting of the semester.

2. The SGA Clerk:

   a. Must follow the same attendance and GPA policy of SGA legislators.

   b. Must take accurate minutes of all proceedings of the general SGA meeting from open to adjournment.

   c. Shall be responsible for editing meeting minutes and presenting them to the SGA Executive Secretary  by the end of every Tuesday at 9:00am in a week, which an SGA meeting has taken place.

   d. Must be an SGA Legislator.

   e. Shall administer the quorum when the meeting is in order.

3. If no SGA Clerk is present, a temporary Clerk will be appointed by the Legislature with a majority vote.

4. Shall fulfill any other duties as assigned by the SGA Executive Secretary.

## SECTION ELEVEN: SGA FINANCIAL CLERK

1. The SGA Executive Treasurer shall recommend to the SGA President a candidate for the position of SGA Financial Clerk and the nomination will be presented to the Legislature in bill form no later than the third general meeting of the semester.

2. Must follow the same attendance and GPA policy of SGA legislators.

3. Must be an SGA Legislator.

4. The SGA Financial Clerk:

   a. Shall utilize their office hour by working with the SGA Executive Treasurer and SGA Bookkeeper.

   b. Shall assist the SGA Bookkeeper with filing of paperwork and maintaining paperwork in a timely manner.

**c.** Shall assist the SGA Bookkeeper with any additional duties assigned by the SGA Bookkeeper.

**d.** Shall chair the Appropriations Committee

**e.** Shall fulfill any other duties as assigned by the SGA Treasurer and SGA Bookkeeper.

**f.** Shall financially train anyone in the case that the SGA Treasurer is not available.

**ARTICLE THREE**

**THE EXECUTIVE**

**SECTION ONE:  EXECUTIVE OFFICERS: DUTIES AND RESPONSIBILITIES**

**A.** The qualifications for the Executive Officers are defined in Article Three of the Constitution.

**B.** The General Corporate Board shall be composed of the elected Executive Officers of the SGA, Inc. All Executive Officers in the SGA are required to hold a minimum GPA of 2.5 or be subject to removal from office. The duties of the General Corporate Board are to perform all duties as defined in the Constitution and as follows:

   **1.** The General Corporate Board shall be responsible for running and maintaining the corporate structure during the summer and winter breaks.  The General Corporate Board shall be responsible for the General Corporate Administration throughout the year.

   **2.** It is recommended that the newly elected General Corporate Board take credits and live on campus during summer session prior to taking office.  The Board will report on the events and issues that arose during the winter break, as well as on the status of the corporation. This written report shall be presented to the Legislature at the first meeting of the spring semester.

   **3.** A written report of the major events and issues that are still pending which arose during the Fall and Spring semesters, as well as the status of the corporation, shall be presented at the last meeting of the respective semester by the SGA President so as to inform the campus community of the events and issues which arose.

**C.** Office Directors

   **1.** The SGA President shall serve as Office Director during academic recess (summer recess, winter break, spring break).

2. The SGA Treasurer shall serve as co-director during academic recess (summer months, winter break, and spring break). They shall assist the Office Director in all monetary procedures and oversee the financial system.

3. The Executive Secretary and the Vice-President shall serve as Associate Office Directors.

4. Duties of the Office Director:

   a. Supervise the running and maintenance of the corporate structure.

   b. Immediately following summer recess and winter break, report to the Legislature on issues, which arose over the academic recess, to be called the State of the SGA Report.  This report shall also be written.

   c. Facilitate and plan SGA activities that shall occur during and following the academic recess, as they see appropriate.

   d. See that all the hours of directors are accurately recorded and verified by the SGA Financial Advisor in order for any compensation to be paid.  Hours must be recorded in a time-clock system.  Any questions or concerns as to the method in which the Office Director conducts this should be made in writing to the co-Director, the SGA Financial Advisor, and the Office Director's administrative advisor (i.e. Dean of Students).

D. Recess Compensation (June 1 – September 1):

   1. The directors shall be compensated equitably.

   2. The directors shall be paid $350 weekly from Unappropriated Surplus to work from June 1st to September 1st during regular business days, determined by the Office Directors themselves. They shall keep a complete and accurate record for such purposes.  They shall be paid during the time they are attending the Summer Leadership Conference. Office hours shall not be conducted between the hours of 12:00am and 6:00am.

   3. The directors must each work no less than twenty-five hours weekly in order to receive payment.  Lunch breaks shall not be included.

   4. The directors shall be allowed seven-paid vacation days and five paid personal days, each day being equivalent to five hours.

   5. The directors shall be allowed nine-unpaid vacation days, each being equivalent to five hours.

   6. The directors will be reimbursed at the end of the week for money spent on food during that

week provided receipts are submitted for up to, but not exceeding $150. No director may be cash advance on any monies for food, except during the Summer Leadership Conference. Directors shall only be reimbursed for money spent on food during weeks when they have accumulated (25) twenty-five hours or more.

7. Directors will not be reimbursed for food during vacation days. A combination of 15 office hours and 2 personal days is acceptable for food reimbursement.

8. A combination of office hours and one (1) personal day can be in one day. This shall only be permitted for emergency situations where the director came into the office and had to leave for an unforeseen circumstance. The directors shall receive on-campus housing during this time. This money shall be taken out of the appropriate budget line.  Directors may subsidize off-campus housing given that it is of equal or less value than on-campus housing, within twenty miles of the campus, and not their legal permanent address.

E. Winter break/Spring Break/Summer Recess before June 1

1. The directors shall be compensated equitably.

2. The directors shall be paid $70 daily from Unappropriated Surplus to work regular business hours when the University is in operation during Winter Break, Spring Break, and the period of summer recess between the last day of Spring semester classes and June 1.

3. The directors shall work no less than five hours each day that they are compensated.

4. Each director shall be reimbursed for lunch from Unappropriated Surplus during days which they are paid. Lunch reimbursement must not exceed $10 per lunch per director.  No director may be cash advanced any monies for lunch.

F. Office Hours

1. All Executive Board members must work a minimum of 10 regular office hours per week. These hours must be between 7am and 8pm, Monday – Friday, established by the second week of the semester, posted in the SGA Office, submitted to the Attorney General and Financial Advisor and followed for the duration of the semester.

2. Each Executive Board member will complete a Time Card. They will punch in when they arrive for their hours and punch out when they leave. These time cards must be submitted to the Attorney General for review at the end of each week. If the Attorney General is unavailable, the

time cards will be submitted to the Financial Advisor.

3.  In the event that an Executive Board member's Office hours conflict with other specific duties and responsibilities of their position as laid out in the Constitution and/or Statutes, the Office hours in question may be skipped.

    a.  A written excuse must be submitted to the Attorney General via email at least one week before the missed Office hours. It will be at the discretion of the Attorney General to decide whether or not the excuse is valid. If it is, the hours do not have to be made up.  If it is not, the hours will come out of the Officer's Personal Hours as outlined in Article Three, Section One, Letter D, Number 4 of these Statutes.

    b.  If the excuse is valid, the missed hours must be publicly posted in the SGA Office and the Office Coordinator must be notified.

4.  Each Executive Board member will be allotted 10 Personal Hours per semester, which they can utilize in case of an emergency.

    a.  The Attorney General must be notified if these hours are going to be utilized. Proper action will be taken against the Executive Board if the Attorney General is not notified.

    b.  Missed hours must be made up within two weeks, or action may be taken against the Officer.

G.  SGA Executive Board Officers may not hold another Executive Board position of any SGA Chartered Organization, during their term of office.

H.  SGA Executive Board officers shall have the power to enforce the laws of the SGA in the absence of a proper procedure, by issuing executive orders.

1.  An executive order shall be used to enforce the constitution, statutes, and policies to any party under the Student Government.

2.  Executive orders must be read to the Legislature the first meeting following their issue.

3.  Executive orders may be overridden in bill form by a 2/3 vote of the Legislature.

4.  In the event that an executive order is written over academic recesses then the Executive Order must be sent to the Attorney General and to the Justices within 24 hours.

I.  The Executive President shall spearhead the planning of Inaugural Ball with the assistance of the Executive Board.

**J.** The Executive Secretary shall spearhead the planning of Senior Week with the assistance of the Executive Board.


**SECTION TWO:  THE ATTORNEY GENERAL**

**A.** The Attorney General may be appointed beginning the last meeting of the Spring Semester prior to the academic year they will be serving as Attorney General. This is to provide them with the opportunity to use the summer to prepare for the year. They shall be appointed by the SGA President with a 2/3 majority vote of the Legislature.

**B.** Shall conduct a systematic and continuing study of the SGA Statutes, and recommend that all inconsistencies in the Statutes be removed and clarified as to meaning.

**C.** Shall be a member of the Executive Branch and an ex-officio member of the Government & Administration Committee and the Organizational Review Committee.

**D.** Shall issue rulings on the constitutionality of any action or procedure pertaining to the SGA.

    **1.** A ruling shall be defined as any time the Attorney General is asked, or feels it is their duty, to advise the Legislature on the constitutionality of a bill, the constitutionality of a statute change, or clarifications and inconsistencies which have been asked to be reviewed.

    **2.** Rulings of the Attorney General may be overridden by a ¾ vote of the Legislature.

**E.** Shall inform the Legislature in an open meeting any time there is belief the Constitution or Statutes have been violated.

**F.** Shall be required to be present for the entirety of all of the meeting(s) of the Legislature. If the Attorney General is not able to attend, permission from the SGA President is required.

**G.** In the event that the Attorney General cannot be present at a meeting or part of a meeting of the Legislature, the acting President Pro-Tempore or SGA President shall nominate with 2/3 approval of the Legislature, a temporary Attorney General to serve during the time of the regular Attorney General's absence.

**H.** Shall serve as the Elections Committee chairperson.  In the event that the Attorney General is a prospective candidate, then the SGA President must appoint a replacement Elections Committee Chairperson with 2/3 approval of the legislature.

**I.** The Attorney General may be impeached in by the SGA President in bill form with a ¾ majority

vote of the legislature. The Legislature may also impeach the Attorney General in bill form with a ¾ majority vote of the legislature.  The reasons for impeachment may be misfeasance, malfeasance, or non-feasance. Impeachment of the Attorney General shall be followed in accordance with Article XI.

**J.** Shall be responsible for keeping track of all Executive Board Office hours during the regular school year.

**K.** May not hold any other position within the SGA. This does not include membership of organizations, but only refers to officer, cabinet, and legislative positions. In the event of a situation arising with any organization that the Attorney General is a part of, the SGA President shall appoint an appropriate temporary designee to deal with the situation.

**L.** Shall enforce the SGA Statutes, Constitution, and all laws passed by the Legislature, rulings of the Judicial Branch, and Policies of the Executive Branch, as the President's Chief Law Enforcement officer of the SGA.

**M.** Shall be required to work a minimum of 3 office hours per week verified by the Executive President.

**SECTION THREE:  <u>CHIEF OF STAFF</u>**

**A. General**

1. The Chief of staff may be appointed beginning the last meeting of the Spring Semester prior to the academic year they will be serving as Chief of Staff. This is to provide them with the opportunity to use the summer to prepare for the year. They shall be appointed by the SGA President with a 2/3 majority vote of the Legislature.

2. They shall be in charge of coordinating the SGA President's Cabinet and/or Executive Branch, keeping a record of their attendance at the meeting(s) of the Legislature, enforcing the expectations of each Presidential Cabinet member.

3. If no Chief of Staff is appointed, the duties detailed in Article Three, Section Three, Letter B shall belong to the Executive President.

4. They shall not be a member of the Presidential Cabinet, a Justice of the Supreme Court  and may not be a legislative representative.

**B. Duties and Responsibilities**

1. Shall compile the Presidential Cabinet members' monthly/semester reports.

2. They may present the SGA President's Officers Report at the Meeting(s) of the Legislature.

3. Shall be required to work a minimum of 5 office hours per week in accordance with Article Three, Section One, Letter F.

4. Shall coordinate community service programs for the SGA.

5. Shall meet with each cabinet member at least once a month.

6. Shall chair all Chief of Staff meetings.

    a. Meetings may be called by either the SGA President or the SGA Chief of Staff.

7. Shall meet with the SGA President bi-weekly to discuss initiatives for members of the Presidential Cabinet.

8. Shall be charged with heading the SGA Relay for Life team.

9. In the event of a vacancy in a cabinet position, the Chief of Staff shall assume the responsibilities of the position.

10. Shall assist the SGA President with any other duties as assigned.

## SECTION FOUR:  THE CABINET

**A. General**

1. All Presidential Cabinet members shall hold and maintain a minimum 2.25 cumulative GPA, as certified by the University Registrar.

2. No Presidential Cabinet member may be a legislative representative.

3. The SGA President, with a 2/3 vote of the Legislature, shall appoint all Presidential Cabinet members.

4. Any/All Presidential Cabinet members shall be able to be appointed at the last meeting of the Spring Semester prior to the year they will be serving on the Cabinet. This is to aid the Presidential Cabinet member by giving them the summer as extra time to prepare for the year.

5. The SGA President shall appoint an individual to serve in every Presidential Cabinet post established in the Statutes at their discretion. The SGA President and any Presidential Cabinet appointee may develop additional projects. Legislative approval is needed to take these projects to committee.

6. Each Presidential Cabinet member will provide a written report to the SGA President at the

conclusion of each semester.  This report should include activities and accomplishments, as well as evaluations and recommendations for the following semester.

7. Each Presidential Cabinet member will provide a written monthly report to the Legislature. This report should contain present goals and activities.

8. Each Presidential Cabinet member is required to attend Meeting(s) of the Legislature, provide an oral report and remain until the adjournment twice per regular four-week month. Any month with less than four meetings of the Legislature shall warrant one required full attendance by Presidential Cabinet members, but two reports during Cabinet Reports.

9. Shall attend Presidential Cabinet meetings at the discretion of the Chief of Staff and/or Executive President.

10. The SGA President shall have the power to create a cabinet post at their discretion. The President shall also be able to make changes to the duties assigned to the cabinet positions. . Any changes to current posts shall become effective after the SGA President has announced them to the Legislature, and said changes have been approved by the Legislature with a majority vote.

11. Shall be required to work a minimum of five office hours per week in accordance with Article Three, Section One, Letter F, with the exception of:

    a. Director(s) of the SGA Programming Board shall complete a total of six office hours, at the discretion of the Chief of Staff.

    b. Class Directors shall complete a total of three office hours, at the discretion of the Chief of Staff.

12. Shall meet with their designated advisor on a bi-weekly basis.

13. Shall meet with the Chief of Staff or SGA President on a bi-weekly basis.

**B. Director of Class One Organizations**

1. Shall act as a liaison between Class One Organizations and the Office of the SGA President through correspondence and in bi-weekly meeting(s).

    a. The first meeting shall take place no later than the fourth full week of the fall semester.

    b. This director must inform all organizations of the meeting time and place no later than two weeks before such meeting.

2.  This director must, or have a designee, take accurate minutes of such meeting and submit them to the Executive Secretary no later than one week after the meeting.

3.  Shall chair the bi-weekly Class One meetings.

4.  Shall coordinate with all Class One organizations to host "Class One Week," which consists of each Class One Organizations hosting at least one event during that week (to be determined at the discretion of the SGA President in accordance with the Director of Class One Organizations). As well as coordinate one event that is co-sponsored with all Class One Organizations.

## C. Director of Class II Organizations

1.  Shall act as a liaison between the Executive Board and the Class II organizations.

2.  Shall be responsible to inform Class II organizations of SGA procedures by holding bi-weekly meetings.

    a.  The first meeting shall take place no later than the fourth full week of the fall and spring semester.

    b.  This director must inform all organizations of the meeting time and place no later than two weeks before such meeting.

    c.  This director must, or have a designee, take accurate minutes of such meeting and submit them to the Executive Secretary to no later than one week after the meeting.

    d.  This director shall take inventory of all items, which have been appropriated by each organization, both recently and in the past at these meetings.

3.  Shall coordinate programming information of these organizations and assist in forwarding this information to the appropriate forms of advertisement.

## D. Director of Class III Organizations

1.  Shall act as a liaison between the Executive Board and the Class III organizations.

2.  Shall be responsible to inform Class III organizations of SGA procedures by holding bi-weekly meetings.

    a.  The first meeting shall take place no later than the fourth full week of the fall and spring semester.

    b.  This director must inform all organizations of the meeting time and place no later than two

weeks before such meeting.

    **c.** This director must, or have a designee, take accurate minutes of such meeting and submit them to the Executive Secretary to no later than one week after the meeting.

    **d.** This director shall take inventory of all items, which have been appropriated by each organization, both recently and in the past at these meetings.

**3**. Shall coordinate programming information of these organizations and assist in forwarding this information to the appropriate forms of advertisement.

## E. Director of Class IV Organizations

    **1.** Shall act as a liaison between the Executive Board and the Class IV organizations.

    **2.** Shall be responsible to inform Class IV organizations of SGA procedures by holding bi-weekly meetings.

        **a.** The first meeting shall take place no later than the fourth full week of the fall and spring semester.

        **b.** This director must inform all organizations of the meeting time and place no later than two weeks before such meeting.

        **c.** This director must, or have a designee, take accurate minutes of such meeting and submit them to the Executive Secretary to no later than one week after the meeting.

        **d.** This director shall take inventory of all items, which have been appropriated by each organization, both recently and in the past at these meetings.

    **3.** Shall coordinate programming information of these organizations and assist in forwarding this information to the appropriate forms of advertisement.

## F. Director of Academic Affairs

    **1.** Shall coordinate the efforts of SGA Legislative representation from the schools and colleges of the University as prescribed by Article One, Section One, and Letter C of the SGA Statutes.

    **2.** Shall be responsible for academic reform within the campus community.

    **3.** Shall be an ex-officio member of the Academic Affairs committee.

    **4.** Shall work with the Student Advocate to deal with problems of student welfare on the University campus.

    **5.** Shall act as the direct liaison between the University and SGA in all matters that affect the

academic well-being of the undergraduate students of Montclair State University.

6. Shall establish and maintain a line of communication with an administrator from the Provost's office.

7. Shall assist all Academic Affairs Legislators in meeting with the Dean of their respective school or college, as stated in Article One, Section Two, Letter B.

## G. Director(s) of Programming

1. Shall be appointed by the outgoing and incoming SGA President each spring to allow for planning during the summer for early fall activities.

2. Shall chair the SGA Programming Board (Student Life at Montclair (S.L.A.M.)) by:

   a. Setting a minimum of two monthly meetings for the SGA Programming Board (Student Life at Montclair (S.L.A.M.)).

   b. Setting a minimum of one monthly meeting for general members to attend.

   c. Acting as a liaison between the SGA President and the SGA Programming Board (Student Life at Montclair (S.L.A.M.)).

   d. Shall be responsible to ensure that the SGA Programming Board (Student Life at Montclair (S.L.A.M.)) is capable of carrying out its activities, purposes and meeting the needs of an evolving campus life.

## H. Director of Alumni Relations

1. Shall Act as a Liaison between the Student Government Association and the Office of Alumni Relations.

2. Shall serve as the SGA representative on the Senior Class Gift Committee.

3. Shall be responsible for informing The Office of Alumni Relations of any campus event for promotion and alumni participation.

4. Shall work with Alumni Relations to plan programs for current students to become familiar with alumni benefits, services, and activities.

5. Shall attend Recent Alumni Network (RAN) Committee meetings and events.

6. Shall meet with The Office of Alumni Relations on a bi-weekly basis.

7. Shall have awareness with issues regarding The Office of Alumni Relations and general Alumni affairs.

8. Work with Alumni Relations to help educate current students on the importance of giving and building a culture of philanthropy.

9. Shall have the privilege of being an ex-officio member of the Student Affairs Committee.

**I.  Director of Student Affairs**

1. Shall be sensitive to the needs and concerns of the entire campus population and make recommendations of such remedies to the Executive and Legislative Branches.

2. Shall be an ex-officio member of the Student Affairs committee.

3. Shall act as a liaison between the SGA and the Division of Student Development and Campus Life.

4. Shall meet with the Vice President of Student Development and Campus Life at least once a month.

5. Shall coordinate the Food Service and Dining Advisory Committee as outlined in Article One, Section Six, Letter A.

6. Shall coordinate the efforts of SGA Legislative representation as prescribed by Article One, Section One, Letter G of the SGA Statutes.

7. Shall assist all Student Affairs Representatives in meeting with the Student Affairs professional, as stated in Article One, Section Two, Letter C.

**J.  Yearbook Editor-in-Chief**

1. Shall chair the SGA Yearbook Team by:

   a. Setting a minimum of two monthly meetings for the SGA Yearbook  Team.

   b. Acting as a liaison between the SGA President and the SGA Yearbook Team.

   c. Shall be responsible to ensure that the SGA Yearbook Team is capable of carrying out its activities, purposes and meeting the needs of an evolving campus life.

**K. Director of Equity & Diversity**

2. Shall be sensitive to cultural and identity issues, herein defined as, but not limited to, matters of gender, race, ethnicity, religion, socio-economic class, age, sexual/ affectional orientation, political philosophy, Veteran Status, and Disability.

3. Shall serve as a liaison between the SGA and the Office of Equity and Diversity.

4. Shall serve as one of the two delegates for the President's Commission on Affirmative Action

and Equal Opportunity (PCAAD).

**5.** Shall serve as the SGA delegate for the University's Multicultural Council.

**6.** Shall assist in finding representation from student organizations for both the Multicultural Council as well as PCAAD.

## SECTION SIX: Publicity Team

**a.** Involves promotion of the SGA and shall act upon such means of publicity, advertising, etc.

**b.** Concerns national, state or local affairs and consider SGA, Inc. membership in any outside organization.

**c.** Involves collaboration or advocacy between the SGA, Inc. and any recognized University Athletic team or recreational board.

**d.** Collaboration between the SGA, Inc. and the University recognized student events and productions.

## SECTION SEVEN:  THE SGA PROGRAMMING BOARD (Student Life at Montclair [S.L.A.M.])

### A. The Programming Board

**1.** S.L.A.M. shall consist of the Director(s), along with four chair positions: Live Entertainment, On-Campus Events, Off-Campus Events, and a Communications Coordinator.

**2.** Each member of the board shall complete a minimum of ten  office hours per week.

**3.** Shall have and maintain a minimum GPA of 2.25

**4.** Each chair shall meet with their advisor at least bimonthly.

**5.** Shall plan and execute large-scale events for the entire campus community.

**6.** Shall have an annual budget allocated by the Legislature, which must be written in bill form by the SGA President and approved by the SGA Treasurer.

**7.** S.L.A.M. shall follow all applicable SGA financial policies.

**8.** Shall meet with the SGA Executive Board at least once a month starting in June of the year they take office.

    **a.** If either Executive Board members or Director(s) of programming, along with four

chair positions: Live Entertainment, On-Campus Events, Off-Campus Events, and a Communications Coordinator feel as though another meeting is needed to maintain a cohesive relationship, they have the ability to call an emergency dual meeting.

    **b.** In matters regarding S.L.A.M., the Executive Board members must hold equal authority in decision making amongst each other.

        **i.** Should the Executive Board not reach a conclusion by majority vote than the Executive President shall serve as the final decision maker.

9. The Director(s), along with four chair positions: Live Entertainment, On-Campus Events, Off-Campus Events, and a Communications Coordinator shall meet with the SGA Treasurer over the summer to receive Financial Training.

10. The term for a chair shall run from June 1st to May 31st.

11. Any chair, which shows negligence, unethical behavior, bad performance, or no performance at all in their duties may be removed from their position by a 2/3 majority vote of the Legislature.

12. Any publicized items and any apparel created or dispersed by S.L.A.M. will read Student Life at Montclair (SLAM) - The SGA Programming Board. The SGA and S.L.A.M official logo must be visible on all flyers.

13. SGA Executive Board members and any member(s) of the president's cabinet, may not serve as chair.

## B. General Body Meetings

1. Membership is open to all undergraduate fee-paying students of Montclair State University.

2. Shall meet at least twice a month at a time and location designated by the Programming Board.

3. Shall elect a general body member to represent S.L.A.M. as an SGA Legislator.

## C. Director of Programming

1. Shall perform all duties of a Presidential Cabinet member, as stated in Article Three, Section Four, Letter A.

2. Shall perform all duties stated in Article Three, Section Four, Letter H.

3. In the event of a vacancy in a chair position, the Director shall assume the responsibilities of the position.

4. Shall work with the SGA Treasurer to set up a meeting with the entire board over the summer

to go through financial training.

**5.**

**6.** Shall assist the chairs of S.L.A.M in any and all issues and conflicts that the chairs may encounter.

**7.**

**8.** Responsible for room bookings for all events.

**D. Financial Director of Programming**

**1.** Shall be appointed by the outgoing and incoming SGA President each spring to allow for planning during the summer for early fall activities.

**2.** Shall serve as the treasurer of the SGA Programming Board (Student Life at Montclair (S.L.A.M.) by:

    **a.** Overseeing all financial activity

    **b**. Reporting to Executive Treasurer's office

    **c.** Assisting the SGA Bookkeeper by ensuring that the four chairs complete paperwork efficiently and accurately

    **d.** Ensuring that the budget allocated to the SGA Programming Board (Student Life at Montclair (S.L.A.M.) is being used efficiently and responsibly in the best interest of the evolving campus community.

**D. S.L.A.M. Appointments**

**1.** The SGA President shall meet with  President-elect, non-returning Director(s) of Programming, and S.L.A.M. advisor(s) to interview candidates for all positions on the Programming Board.

    **a.** In the event of a vacancy during the term of office, the current President, Director(s), and advisor(s) must interview candidates to fill the position.

**2.** The interview process shall begin no later than a week after the end of the SGA Elections.

**3.** Returning members of The Programming Board shall not be guaranteed a position.

**4.** All chair positions shall consist of no more than two (2) undergraduate fee paying students.

**E.  Live Entertainment Chair(s)**

**1.** Shall be responsible for at least one large-scale Live Entertainment event (MontclairFest/M-Glow, a concert, a Comedy Show, etc.) each semester.

## F.  On-Campus Events Chair(s)

**1.** Shall be responsible for planning and executing:

  **a.** At least five small-scale events per semester.

  **b.** Events during Fall Frenzy.

  **c.** The weeks of Homecoming and Spring Week.

## G.  Off-Campus Events Chair(s)

**1.** Shall be responsible for planning and executing:

  **a.** A formal once a semester.

  **b.** One other off-campus event per semester.

## H.  Communication Coordinator

**1.** Shall be responsible for informing the undergraduate, fee-paying students of programming events through available means of publicity.

**2.** Shall perform secretarial tasks on behalf of the S.L.A.M.. This includes but is not limited to meeting minutes and attendance.

**3.** Shall serve as the liaison between S.L.A.M. and the Media Team.

**4.** Shall work directly with the Executive Secretary to help promote all SGA events.

## SECTION EIGHT:  The Yearbook TEAM

## E.  The Yearbook Team

**1.** The Yearbook Team shall consist of the Yearbook Editor-in-Chief , along with Photographers.

**2.** Each position shall meet with their advisor on a bi-weekly basis.

**3.** The term for a chair shall run from June 1st to May 31st.

**4.** The team will be under the supervision of the Executive Secretary.

## E.  Yearbook Team Appointments

**1.** The SGA President along with the Executive Secretary shall meet with the President-elect, Secretary-Elect, graduating Yearbook Editor-in-Chief, and the Yearbook Team advisor(s) to interview candidates or all positions on the Yearbook Team.

**2.** The interview process shall begin no later than a week after the end of the SGA Elections.

**3.** Returning members of The Yearbook Team shall not be guaranteed a position.

**4.** The most qualified person(s) shall be appointed in bill form by the SGA President and

President-elect, free of personal bias.

**E. Yearbook Editor-In-Chief**

1. Shall be responsible for "La Campana", also known as the yearbook.

2. Shall meet with the representative from the yearbook company on a bi-weekly basis.

3. Shall present a monthly yearbook report to the President on its current status.

4. Shall have the privilege of overseeing the yearbook staff.

**E. Photographers**

1. Shall be responsible for:

   a. Photographing events on campus.

2. Shall ensure photographers attend at least:

   a. 1 SGA meeting.

   b. 2 Events during Homecoming.

   c. 2 other On- Campus events.

   d. 1 Off-Campus event.

   e. 1 Live Entertainment event.

**SECTION NINE:  <u>LEADERSHIP RETREAT</u>**

**A.** All Student Government Executive Officers, Judicial Officers, Legislator(s) and Executive Presidential Cabinet Members shall be required to attend the SGA Retreat in the Fall and Spring, which shall be planned by the Executive Vice President.

**B.** In the event that it is impossible for an individual to attend, said individual may obtain an excused legislative absence from the Executive Vice President.  Failure to attend the Conference without an excuse shall result in one unexcused Legislative absence.

**C.** The President and Treasurers of All Chartered Organizations shall be required to attend the Leadership Retreat, unless excused by the SGA Executive Board.  If unable to attend, suitable representation shall be decided upon by the executive boards of both the organization and the SGA. Any unexcused absence will result in a fine of 10% of the offending organization's budget per representative not in attendance, as decided by the SGA Executive Board.

**D.** The Executive Vice President shall give four weeks notice to all persons who are required to attend the Leadership Conference.

# ARTICLE FOUR
## ELECTIONS

**SECTION ONE:  SCHEDULE**

**A.  General**

1. The Elections Committee:

    a.  Shall be formed no later than the second to last meeting of the fall semester, at which time a definitive meeting will be set;

    b.  Shall be chaired by a person appointed by the Executive President in bill form by the first Legislative meeting of the Spring semester;

    c.  Shall consist of five Legislators and

    d.  Have a definitive meeting time.

2. Selected Legislators shall be excused from any general SGA meetings they must miss as necessary to fulfill their duties as Committee members.

3. If a Legislator cannot serve, they shall be replaced by another randomly selected Legislator.

    a.  Each committee member shall have one vote.  Resolutions, rulings, and any other issues vote on by the committee shall require 3/5 of the core Legislators to pass.

    b.  If, for any reason, a legislator serving as committee secretary must serve as chair, then said legislator serving as chair may not vote, unless there is a tie, at which point the chair would normally break the tie as per Robert's Rules of Order.

    c.  Shall be responsible for receiving and reviewing student petitioned referendum questions. These referendums must then be submitted to the SGA Legislature and be passed in order to be placed on the ballot.

4. The method by which the elections will be carried out shall be voted on by the Elections Committee and announced to the Legislature by the chair at the last meeting in February.

5. If the Legislature does not accept the Elections Rules by a 2/3 vote, the Attorney General may request a discussion on the issue during Open Forum.

6. Dates for the election, which shall last no longer than ten consecutive days, shall be stated in the Elections Rules.

7. Dates for the election of representative(s) of the SGA Legislature shall follow Article Two,

Section Three of the Constitution.

8. Dates for the election of the Student Representative to the University Board of Trustees shall be the same dates used for the election of the Executive Officers of the SGA, and this election shall be administered by the SGA.

9. All candidates must abide by the rules and regulations set forth or provided for by this article, as well as any additional rules and regulations approved by the Legislature.

10. Polling Stations or any other voting mechanisms not operated by the SGA under the control and supervision of the Elections Committee shall be forbidden. Candidates directly operating voting booths or similar voting mechanisms shall face immediate disqualification.

**B. Special elections and vacancies**

1. In the event that an Executive Office is vacated, whether by recall, resignation or for some other reason and the filling of this office is not specifically provided by within the Constitution or by previous Statute law, then a special election shall be requested by the SGA President, declared by the Legislature and administered by the Government and Administration Committee.

2. If vacancies still exist after this special election is held, the SGA President shall appoint a candidate with credentials to fill the executive office within two (2) weeks in bill form. Within two weeks of their nomination the legislature shall vote on the bill and the appointee shall assume the vacant office with the advice and consent of a 2/3 vote of the Legislature.

3. Constitutional Provisions for Replacement of Officers:

   a. Executive President-Article III, Section 1, Part B of the Constitution.

   b. Executive Vice President, Article III, Section 3, Part B of the Constitution.

   c. In the event that the position of the Attorney General is vacated, the SGA President with 2/3 consent of the Legislature shall appoint a replacement.

4. Legislative vacancies shall be filled in accordance with the Article 1 Section 1.  The same appointment shall apply and all petitions must be submitted by 12 noon on the Friday of the third full week of the semester, after which time appointments are at the discretion of the President of the Legislature and the PPT as per Article I.

**C. Contesting elections**

1. All challenges of elections must be made by the close of the polls. Any undergraduate student may make challenges. An election shall be defined as the period of voting to which the polls have opened.

2. They shall be submitted in writing to the SGA Executive Board, the Election's Committee Chair, President Pro Tempore of the Legislature and the Chief Justice.

3. Violation of Article IV of the Statutes or the Election Rules or any other substantial matter can be grounds for a contestation.

4. Any challenge made after the closing of polls may only be accepted at the discretion of the Judicial Court.

5. If the Judicial Court rules contest the elections, the guidelines under Article IV, Section One, letter B shall be followed.

## SECTION TWO:  PETITIONS

1. Nomination to appear on the ballot for election to office shall be self-nomination by petition.

2. SGA Executive Office, Judicial Branch, and Board of Trustees Representative(s) candidates shall submit a petition bearing 300 undergraduate signatures.

3. Candidates for Representative(s)-at-large in the Legislature shall submit a petition bearing 150 undergraduate signatures.

## SECTION THREE:  UTILIZING AN ONLINE VOTING SYSTEM

## A. VOTING

1. Two weeks prior to the commencement of the voting period, the Attorney General shall submit to the administrators of the voting system the following:

   a. The list of candidates who have submitted petitions for office and meet the requirements set forth to run for those positions.

      i. The candidate must receive a majority vote in the affirmative of the people voting for said position to assume office.

   b. Any referendum question that is to be voted on by the student body, as determined by the Legislature.

2. The online voting system shall be made accessible during the dates determined by Elections Rules.

3.  The Election Committee shall make available to the student body instructions and information pertaining to the online voting system.

4.  All Legislators must work at least two hours publicizing the election in ways to be determined by the Elections Committee.

5.  No one will be permitted access to the voting system, i.e., permitted to vote, if they are not verified in the registry as an undergraduate student of the University.

6.  Graduate Students may vote in the Student Representative to the Board of Trustees elections only. Alumni, Faculty, and non-students shall not be allowed to vote or enter into the voting system.

7.  On the last day of voting, the polls shall close no later than noon in order that the results can be verified in a timely manner.

8.  Immediately after the closing of the polls, the chair and the Dean of Students (or designated representative) shall verify the votes obtained during the voting period.

9.  No later than three business days following the close of the online voting period, the chair shall release the official votes of the elections to the student body. These results shall be signed and dated, and shall be entered into the SGA agenda for the concurrent week.

## SECTION FOUR:  ELECTION COMMISSIONERS

1.  Voting members of the Elections Committee shall be individually named Election Commissioners.

2.  Each Election Commissioner shall be deemed in charge of advertising the elections in separate sectors of the campus.

3.  These duties shall be assigned no later than two weeks prior to the start of the campaign portion of the elections.

4.  The Elections Committee chair shall, based on the number of committee participants, divide the campus into an appropriate amount of sections and the distribution of such sections shall be opened up to committee members in an order based on a random lottery.

5.  The title of each individual shall be read, "Election Commissioner of (Residence Hall), (Academic building), campus kiosks, and online advertising."

# ARTICLE FIVE

## CHARTERING OF ORGANIZATIONS & PROGRAMMING

**SECTION ONE:  CLASSIFICATION OF ORGANIZATIONS**

**A. Chartered organizations shall remain in good standing by:**

1. Providing programming to all the University undergraduates;

2. Offering membership free of dues and discretion, unless otherwise stated in this section;

3. Performing frequent and efficient programming;

4. Adhering to all rules and regulations of the SGA,

5. Adhering to University policies by remaining in good standing with the University;

6. Attending meeting(s) for which proper notification is given;

7. Submitting all required minutes and paperwork as specified by the relevant Executive, Legislature, and Judicial officers of the SGA;

8. Faithfully upholding the ideals expressed in SGA rules and regulation;

9. Updating and properly monitoring Montclair State University's Student Engagement Portal OrgSync or HawkSync.

10. In addition to the benefits outlined in this section, chartered organization in good standing are entitled to free campus meeting space, advertising rights, office credits as outlined in Article Six, appearance in the yearbook, and all other such recognition and protection associated with organization charters.

**B. CLASS ONE ORGANIZATIONS**

1. **Criteria**:  A Class One organization shall 1) have an appeal that reaches the general interest of the entire campus community or have an appeal that fosters pride for and mobilizes awareness of the interests of a large, distinct, and prolific subculture of the campus community, as deemed by the discretion of the chartering process, 2) prove to have a demand for membership significantly larger than its most recent Class II chartering, 3) prove to have financial and programming needs unable to be met by the benefits of a Class II charter, 4) have spent a minimum of four consecutive years as a Class II organization, 5) shall provide at least ten programs each semester 6) must have one member of their organization represent as a legislator

in the SGA. Class One charters shall be authored by the SGA President, follow the Legislature's standard operating procedures, and be valid for one academic year.

2. **Benefits:**  Class One Organizations shall be entitled to 1) a yearly budget as allocated by the Legislature, 2) priority for student office space, 3) representation in the Legislature as outlined in Article One, 4) keep a portion of that which they fundraise through advertising, as outlined in the Executive's financial policies and, 5) have a mailbox in the Student Government office.

## C. CLASS II ORGANIZATIONS

1. **Criteria:**  A Class II organization shall 1) have an appeal that reaches a large and significant interest of the campus community, as deemed by the discretion of the chartering process, 2) prove to have a demand for membership significantly larger than its most recent Class III chartering, 3) prove to have financial and programming needs unable to met by the benefits of a Class III charter, 4) have spent a minimum of two years as a Class III organization. Class II charters shall be valid for one academic year, 5) shall provide at least eight programs each semester 6) are willing to have one member of their organization represent as a legislator in the SGA, and 7) shall submit an end of the semester report, in the fall and spring, of all programming events that occurred to the Director of Class II Organizations by the designated University Reading Day.

2. **Benefits:**  Class II Organizations shall have the right to 1) approach the Legislature for programming monies as outlined in Article Six and 2) request student office space after the needs of Class One organizations' office space are met, 3) fundraise, and 4) have a mailbox in the Student Government office.

## D. CLASS III ORGANIZATIONS

1. **Criteria:**  Class III organizations shall 1) be organizations that meet the needs of a very specific and unique interest of the campus community and 2) attract students from the campus community that yet to be specifically represented by a chartered organization.  Class III charters shall be valid for one academic year, 3) shall provide at least six programs each semester 4) shall submit an end of the semester report, in the fall and spring, of all programming events that occurred to the Class III Director by the designated University Reading Day.

2. **Benefits:**  Class III Organizations shall have the right to 1) approach the Legislature for

programming monies as outlined in Article Six and 2) fundraise, and 3) have a mailbox in the Student Government office.

### E. CLASS IV ORGANIZATIONS

1. **Criteria**: Class IV organization shall 1) be entry level organizations that meet the needs of a very specific and unique interest of the campus community and 2) attract students from the campus community that are yet to be specifically represented by a chartered organization. Class IV charters shall be valid for one academic year, 3) shall provide at least 4 programs each semester 4) shall submit an end of the semester report, in the fall and spring, of all programming events that occurred to the Class IV Director by the designated University Reading Day.

2. **Benefits**: Class IV organizations shall have the right to 1) have a mailbox in the SGA office, 2) fundraise, and 3) have a personal account with the SGA.

## SECTION TWO:  THE CHARTERING PROCESS

### A. Membership

1. Shall consist of no less than fifteen active undergraduate students, unless otherwise stated in this Section.

2. Membership shall be open to all undergraduate students, unless otherwise stated in Section One.

3. Shall not charge membership dues, unless otherwise stated in Section One.

### B. Required Material

1. Charter packet that includes a membership list, officer information sheet, organization information sheet, a copy of organization's constitution.

   a. This shall be signed and verified by the SGA Vice President and President Pro-Tempore.

2. List of planned activities and goals.

3. Purpose statement.

4. Initial Charter organizations shall have at least two potential executive board members and their contact information.

### C. Initial Charter Process & Procedures

1. The organization shall find a sponsor as outlined in Article Two.

2. Make an appointment with the Organizational Review Committee as directed by the President Pro Tempore of the Legislature.

3. All religiously based/affiliated organizations must go through a vetting process through the Council for Faith and Spirituality before attending Organizational Review Committee.

4. Hand in all required material before signing up.

5. Attend the meeting of the Legislature following release from the Organizational Review.

## D. Initial Charter Evaluation

1. The organization's purpose should be unique and attract students from segments of the community that have not previously been represented by an SGA chartered organization.

2. Must demonstrate sufficient structure to effectively program and serve the needs of the undergraduate community of the University.

## E. Charter Renewal/Upgrade Process & Procedures

1. Class II, III, and IV organizations must find a sponsor as outlined in Article Two.

2. Organizations shall make an appointment with the Organizational Review Committee as directed by the President Pro Tempore of the Legislature.

3. Class One organizations must submit all required paperwork and approach the SGA President to sponsor a charter by the fourth week in the spring semester.

4. Class II, III, and IV organizations will have a deadline set by the President Pro Tempore of the Legislature during the given semester's fourth week.

5. All organizations are required to attend the Legislature's meeting after its release from the Organizational Review Committee.

6. Class One organizations are required to prove to the Organizational Committee a good and consecutive history of legislative representation in the SGA by a member of their organization.

## F. Charter Upgrade Evaluation

1. An organization wishing to upgrade its charter shall prove more than one of the following characteristics:

   a. Extraordinary membership growth,

   b. Financial demand,

   c. or campus appeal.

    2.  The discretion of the chartering process shall be based on the criteria found in this Article, but not limited within.

## G. Organization's Portfolio

    1.  To be considered for renewal or charter upgrade, the organization must present a portfolio.

    2.  The portfolio may include but is not limited to:

        a.  A list of awards.

        b.  A list of past events.

        c.  Flyers.

        d.  Pictures.

        e.  Treasurer's Report.

    3.  The portfolio materials should be kept in a folder with paper fasteners.

    4.  The Legislature, being well informed, may employ this portfolio as a tool in determining a decision regarding the organization recharterment or upgrade.

## H. Specific Requirements for Class IV Charters

    1.  Class IV Organizations shall not have the privilege of appropriating money from Unappropriated surplus.

## I. Charterment Grace Periods

    1.  Any Class II, III, and IV organization that misses its assigned semester to recharter will have a one semester Grace Period during which they can still recharter, excluding winter and summer breaks. During this semester, the organization will hold an SGA Charter with all its benefits except for the privilege of appropriating money from Unappropriated Surplus and may only appropriate matching fund appropriations.

    2.  If the organization succeeds in being rechartered in its Grace Period, they will be entitled to all the benefits of an SGA charter the following semester, excluding winter and summer breaks.

    3.  Failure to re-charter during Grace Period results in an inactive charter for the following semester and the organization is no longer recognized by the SGA.

## SECTION THREE: <u>MEETINGS AND MINUTES</u>

## A. Meetings

    1.  All organizations chartered under the SGA must go to the appropriate meeting(s) in order to

stay in good standing with the SGA.

    **a.** Class One organization meeting(s) will be set by the Director of Class One.

  **2.** Class II, III, & IV meeting(s) will be set by the Director of Class II, III, & IV Organizations.

  **3.** The Director of Class One Organizations & the Director of Class II, III, IV Organizations will be responsible for informing the President Pro Tempore of an organization's status.

**B. General Body Minutes**

  **1.** Organizations must keep up to date minutes and submit them to their respective Class Director after every meeting.

  **2.** The format for the minutes shall be determined by the Class Directors at the beginning of the academic year.

  **3.** If any organization submits the meeting minutes to the Class Directors after the set time and date, their minutes shall be considered late. The Class Directors may excuse late minutes with just case. For every two unexcused late minutes an organization submits, one offense of missing minutes will be added to that organization along with all disciplinary actions it entails.

**SECTION FOUR: <u>CHARTER REVISIONS</u>**

  **A.** Nothing in this Article shall be construed as to prevent the Legislature from adopting interim changes during the tenure of any charter.

**SECTION FIVE:  <u>PROGRAMMING</u>**

  **A.** All Class One, II, III, and IV organizations receiving appropriations, shall abide by any forms, rules, procedures or other matters determined to be necessary to establish efficient programming and evaluations.

  **B.** The SGA Treasurer shall have the authority to establish those matters provided for in Part A of this section.

  **C.**  All organizations wishing to receive appropriations must submit a room request via The University's Room Booking System 14 days prior to submission of your bill to the agenda.

  **D.** All organizations wishing to receive appropriations must provide a letter of confirmation of Date, Time and Location of the event the week the bill goes up to be considered.

## SECTION SIX: <u>ADVERTISING POLICY</u>

**A.** All following policies should apply for advertising and utilization of promotional material(s):

    **1.** All promotional material shall include charter class.

    **2.** Flyers must be posted only in accordance with campus policies.

    **3.** Each organization chartered by the SGA must include in their constitution this advertising clause.

    **4.** Each organization chartered by the SGA shall receive a copy of the posting policies within one week of the commencement of each semester.

    **5.** Current University Posting Policies supplement this clause.

## SECTION NINE:  <u>MONTHLY MEETINGS</u>

**A.** All Class II, III, & IV Organizations seeking appropriations in a given semester or who will be seeking recharterment/reclassification that semester, must send a voting representative to the monthly meeting with their respective Class Directors, or provide a written excuse to their respective Class Directors no later than three days before such a meeting is to take place.

**B.** Their respective Class Directors will determine the validity of excuses.

**C.** For any other organization, these meetings shall be considered optional, but failing to attend shall be considered a forfeiture of their right to an appropriation for that semester.

**D.** If an organization seeking recharterment/reclassification does not attend these meetings, it shall be that organization's responsibility to know what documentation needs to be submitted.

## SECTION TEN:  <u>ORGANIZATION SEMESTER REPORTS</u>

**A.** All SGA chartered organizations must submit a semester report at the end of every semester on programming done, goals accomplished, and list of active members to their respective Directors.

**ARTICLE SIX**

**<u>FINANCIAL POLICIES</u>**

# SECTION ONE:  CORPORATE AND BUDGETARY POLICY

### A. Constitution

1. Any organization that receives an annual budget must have an SGA approved Class One charter on file with the Executive Vice President.

### B. Reports

1. The organization's treasurer must submit detailed financial reports by the tenth of each month to the SGA Bookkeeper and SGA Treasurer.  The SGA Treasurer has the right to refuse any other financial transactions until such reports are submitted.

2. The SGA Treasurer shall report once a month to the Legislature. Said report shall include a breakdown of monthly expenditures by the Student Government Association.

3. At the end of each semester, the Treasurer's report shall be written and disbursed to the Legislature and it will show the ending balances for all Class One organizations for that semester.

4. The Attorney General and the Chief Justice shall have access to all financial statements/paperwork of the Student Government Association.

### C. Contracts

1. All contracts to be negotiated for any SGA organizations must be submitted to the SGA Treasurer's office to be signed by the SGA President for approval prior to formal execution by the performer or agency involved.  Contracts must state the name of the organization and, where appropriate for SGA approval, "for the Student Government Association of Montclair State University Inc. by (SGA President's name), President."

2. Sanctions for any infractions of contract policy can be found in the Executive Financial Policies.

### D. Deposits

1. All SGA organizations will deposit any and all monies within the SGA's accounts.

    a. If an organization has a personal account within the SGA Treasurer's office and has not been active for four (4) consecutive semesters, it will be classified as a dormant account. Therefore, the funds within the personal account will be moved to Unappropriated Surplus by the SGA Bookkeeper, after consulting with the current

SGA Executive Board.

2. Monies collected during a school day must be deposited at the SGA office that day with the SGA Treasurer or SGA Bookkeeper.  A receipt will be issued for said funds.

3. Prior arrangements must be made with the SGA President and Treasurer for monies collected at an event in the evening.  These funds should be deposited with the SGA Treasurer and Bookkeeper by the next regular business day at the latest.

4. No organization may deposit money or have an account in any outside bank.

5. Any organization wishing to sponsor or co-sponsor an event for charity must receive prior written approval from the SGA President and SGA Treasurer.

**E. Expenditures**

1. There will be no reimbursements or appropriations for personal expenditures related to an organization unless authorized by the SGA Treasurer in advance.  The SGA is not liable for disbursing funds to organizations for an event or purchase if said activity has already occurred or financial commitments have been made without proper authorization or previous notice.

2. Authorized transportation expenses for trips at a rate of no more than the University's current limit and no less than $.05 set at the current rate at the first day of the semester for reimbursement for their activities. The rate of appropriation for gasoline will become effective on the first day of each subsequent semester. Tolls will be reimbursed upon presentation of toll receipts.

3. Personal and Professional Services

    a. Personal services, which are reimbursable, must be submitted on standard Purchase Requisitions.

    b. A proposal letter approved by the SGA President and SGA Treasurer must cover Professional services such as legal and auditing services.

4. All monies requested in advance of the SGA Purchase Requisition system must be accompanied by the proposal from the appropriate vendor. All costs must be specified in a letter along with an authorized Purchase Requisition. Checks will be made out directly to the vendor. The SGA Treasurer has final approval of all personal advances when the President and Treasurer of the organization request an advance and sign the appropriate forms.  Receipts must

be submitted on the date specified.

5. The SGA and Class One Organizations have the ability to request for cash advances. For all cash advances, a budget detaining the contemplated expenditure must also be submitted to the SGA Treasurer.  Failure to complete the advance forms properly and on time will result in the holding of checks for that organization.

## F.  Procedures

1. As per the SGA Constitution, all additional financial policies and procedures as adopted by the current SGA President and SGA Treasurer shall be adhered to by all SGA chartered organizations.  Information shall be available in the Financial Policies and Procedures manual provided by the SGA Treasurer.

   a. Changes in these executive financial policies and procedures must be announced to the Legislature for final approval as per Article II, Section Four, Letter D of the SGA Constitution.

   b. All affected organizations must be notified in writing fourteen days before statute changes go into effect.

## G.  Capital Investment

1. The General Corporate Board shall create and reserve, through an annual allocation of revenues, a separate capital investments account.  These funds are available to the SGA at the discretion of the SGA Executive Treasurer and the SGA Executive President and all Class One organizations.  Monies can only be appropriated with the approval of 2/3 of the Legislature (when the Legislature is in session) outlined in the Financial Policies. However, in the case of winter or summer sessions, the SGA can purchase capital investment articles. A report must be given at the first meeting following the winter or summer recess given by the Executive President or Treasurer.

2. A capital investment will be defined as any article purchased, with a value of $100 or more, which will benefit the organization for more than one academic year.

3. All standard financial policies will be adopted for such purchases.

4. There must be an ongoing list of all the SGA budgeted organization's capital investments. The SGA Attorney General and Chief Justice have access to this list at all times.  Included should

be the brand name of the article, the model number, the serial number, and the date of purchase.

**5.** The SGA Treasurer or a designee(s) will check that the inventory is still in the possession of the respective organization during the last month of each semester.

**6.** The total amount of funds in the Capital Investment Account shall not exceed $100,000.

**7.** The amount allocated to the Capital Investment Account shall not be below $25,000

## H. Phone Expenditure

**1.** Phone use is to be limited to organization business.

**2.** If the SGA President and SGA Treasurer believe that phone services are being abused, said phone services may be terminated and/or the student may be charged for calls.  Phone bills do not need to be accompanied by a purchase order.

## I. Conventions and Conferences

**1.** Car rentals are an individual expense and are not to be charged to the organization.

**2.** Hotel, travel, and registration fees will be handled in the same way as an advance request for money.

**3.** A written report of the activities of the convention must be kept on open file.  Any individual who attends a conference or convention for a Class One organization, SGA Executive Branch, or the SGA, shall provide a written report to the respective organization(s) and to the Legislature regarding activities attended and recommendations derived from the event.

## J. Events

**1.** An honorarium is not to exceed $150 per speaker. An honorarium is defined as a gift which includes, but is not limited to, awards, certificates,, and coverage for costs of travel.

    **a.** No honorariums such as gift cards, cash, checks, direct deposits, or anything else of direct monetary value can be given to a faculty/staff member.

**2.** If a function is to be open to the student body at no charge, only students with validated undergraduate student identification cards are to be admitted for free, if seating is limited. All others are to be charged. If an organization wishes to provide food from a source other than Dining Services, the proper paperwork must be obtained from Food Services.  Said paperwork must be completed and submitted to the Executive Treasurer and the Office of Auxiliary

Services.  The checklist included in the procedures indicated in said paperwork must be in progress prior to the appropriation of funds for the event.

## K. Payroll

1. The SGA President and SGA Treasurer must approve all hiring of employees.

2. Persons employed by the SGA for any period of time must fill out the appropriate employment applications, which are to be approved by the SGA President and SGA Treasurer.  Withholding forms are to be submitted to the Bookkeeper.

3. Payroll ledgers are to be maintained by the organization and Bookkeeper.

4. Paychecks are to be issued weekly.

5. All monies earned from interest on SGA investments will accrue to General Corporate Operations to offset salaries of full-time employees.

## L. Budgets

1. The fiscal year for the Student Government Association of Montclair State University, Inc. and all organizations chartered by them will be from June 1st to May 31st.

2. Budget requests are to be submitted to the SGA Treasurer on or before the last week in February.

3. Budget requests will consist of:

   a. A proposal for the upcoming academic year with a fall/spring breakdown, and

   b. An explanation of each budget line.

4. The SGA President and SGA Treasurer will review the initial Budget Request and will return recommendations and criticisms to the organizations no later than the second week of March.

5. If needed, a budget review meeting with each organization and the SGA President and SGA Treasurer.

6. The SGA President will submit the budgets to the Legislature by the meeting following spring break.  Each budget may be discussed independently after the respective organization's constitution has been approved by the Legislature.

7. Adjustments in the proposed budgets may be made by the Legislature.

8. Budgets are to be strictly adhered to unless difficulties arise which necessitate changes.  Any request for alteration in the budget, via line transfer, must be submitted to and approved by the

SGA Treasurer.

9. If an organization has a deficit in their balance by the end of the school year, the organization will go on probation for the next semester at the discretion of the General Corporate Board.

10. Services that operate out of General Corporate Operations must submit budget breakdowns. They will be included in the General Corporate Operations budget.

11. If the SGA President and SGA Treasurer have reasonable suspicion that an organization is illegally spending funds, or disregarding policies all funds of that organization will be frozen until action is taken by the Judicial Branch. Only approved contractual agreements will be honored.

12. The books and records of all organizations are to be open to the inspection of the SGA at all times. Treasurers are responsible for attending meetings for financial information, failure to attend will result in not having access to their funds.

13. The authorized physical signatures of the organization's President and Treasurer, or equivalents must be submitted to the SGA Treasurer  Each time this information changes  new information must be submitted.

14. The unused funds that are budgeted to organizations and the SGA will revert back to Unappropriated Surplus following the closing of all lines with a negative balance as of May 31st of each year.

## M. Loans

1. Neither the Student Government Association of Montclair State University, Inc. nor its budgeted organizations shall provide loans for any reason to any group or individual.

## N. Key Policy

1. Students are responsible for the keys issued to them.  Failure to return keys will result in the withholding of transcripts and/or diplomas until a $10 levy is paid for each key or until each key is returned.

2. Should an individual require a replacement key during the year, said individual shall pay the $10 levy before receiving the new key.

## O. Charge Accounts

1. Only those charge accounts necessary to ensure the daily operation of the SGA shall be

maintained.  No off-campus charge accounts for travel or entertainment shall be maintained.

## P.  Special Appropriation

1.  If any Class I, II, III  organization(s) find that during the course of a fiscal year, it is insufficient to carry out its planned activities and/or its constitutional obligation or if it should discover that it has a need to acquire, repair, or replace equipment or materials, then that organization may approach the Legislature for a "Supplemental Appropriation".  A Supplemental Appropriation is money put into the proper line(s) of a Class I, II, III  Budget only for the reasons listed above.

2.  A Supplemental Appropriation shall be limited to no more than:

a.  $5,000 for Class I budget for the current fiscal year

b.  $3,000 for Class II budget for the current fiscal year

c.  $2,000 for Class III budget for the current fiscal year

3.  If a Class I, II, III  organization or is faced with a programming situation, said organization may approach the Legislature for an "Emergency Appropriation". An Emergency Appropriation is an allocation of funds to an organization that allows it to resume proper operation. All emergency appropriations shall pass through the Appropriations Committee. The committee shall first decide whether or not the bill constitutes an Emergency or a Supplemental Appropriation. The decision of the committee may be overturned by a 2/3 vote of the Legislature on an appeal of the organization.

4.  Procedure for Supplemental or Emergency Appropriation:

   a.  An organization of the SGA will prepare a proposal and submit it to the the SGA Treasurer and the SGA President.

   b.  Upon approval from the SGA Treasurer and SGA President, the Class One representative shall write and submit the bill to the Legislature.

      i.  In the event that the organization does not have a Class One representative the SGA President shall write the bill.

## Q.  Class Two Reserves

1.  The Corporation shall set aside $40,000 from the total corporate revenues as Class II Reserves. This account shall be replenished annually. These funds shall cover all requests of Class II organizations until the reserve is depleted. After the reserve is depleted, any funds remaining in

Unappropriated Surplus can be used to appropriate money towards Class II organizations.

**R. Class Three Reserves**

1. The Corporation shall set aside $20,000 from the total corporate revenues as Class III Reserves. This account shall be replenished annually. These funds shall cover all requests of Class III organizations until the reserve is depleted. After the reserve is depleted, any funds remaining in Unappropriated Surplus can be used to appropriate money towards Class III organizations.

**S. Class IV Reserves**

1. The Corporation shall set aside $5,000 from the total corporate revenues as Class IV reserves. This account shall be replenished annually. These funds shall cover all requests of Class IV organizations until the reserve is depleted. After the reserve is depleted, any funds remaining in Unappropriated Surplus can be used to appropriate money towards Class IV organizations.

# SECTION TWO:  <u>APPROPRIATIONS</u>

**A. General**

1. Proof must be provided that the University policy regarding bringing in food from an outside source (outlined in Article VI, Section One, Letter J, Number 3) is being followed if the breakdown includes money to pay for food not provided by Dining Services.

2. Legislative appropriations must be spent through certain lines established by the SGA Treasurer.

3. The organization must meet the following criteria:

   a. Must hold a valid SGA charter.

   b. Must maintain current minutes with the Executive Secretary.

   c. Minutes must be recorded for all organizational meetings and filed with the Executive Secretary according to the deadlines set at the beginning of each semester.

   d. Must have a current Signature Card on file with the SGA Treasurer.

4. The organization must wait until the semester after their initial charter is approved, excluding summer and winter semesters, to receive funding.

5. Organizations will comply with all financial policies and requirements as set by the SGA Treasurer.

6. No monies will be appropriated for an event or purchase if said activity has already occurred or

financial commitments have been made prior to SGA approval.

7. Chartered Organization officers may not receive financial or material remuneration from the SGA. Inc. for performed duties that are related to the activities of said organization.

8. Direct fundraising shall be defined as anything except funds received from the donations of the members of that organization.

9. If a Class II or III organization receives a profit by using funds from Unappropriated Surplus or the Class II and III Reserves account, they must reimburse the SGA for the total amount that was initially appropriated to them. The SGA Treasurer will oversee that all SGA funds used to make a profit for an organization are collected.

## B. Matching Funds

1. Shall follow the same bill process as all other financial bills outlined in Article Six, Section Two, Letter D.

2. Shall be defined as monies that, provided the requesting organization has the funds available in their personal account, SGA will match the amount, dollar for dollar, said organization is willing to contribute towards purchasing a good or service.

## C. Financial Grace Period

1. Shall be the first 28 days of the fall semester.

2. Financial Grace Period is only for events happening within the first 28 days of the fall semester.

3. Legislative bills for appropriations must be submitted on any Monday to be considered at the meeting on Wednesday.

4. The time of day all bills must be submitted by, on said Monday, will be at the discretion of the Executive Vice President.

5. All Financial paperwork must be submitted in a timely manner after the bill has been passed.

6. S.L.A.M. is not entitled to a Financial Grace Period, as they have access to their account starting June 1st of the fiscal year.

## D. Financial Bills

1. Monetary requests will consist of:

   a. The total amount, broken down by organization input and SGA input, to be included in the Legislative bill.

    **b.** A standard SGA information form with current information.

    **c.** The current financial status of the organization with information on fundraisers, events, and other sources of revenue.

    **d.** Proof that University Policy regarding bringing in food from an outside source (outlined in Article Six, Section Two, Letter A, Number 1) is being followed if the breakdown includes money to pay for food not provided by Dining Services.

**E. Process**

   **1.** The Legislative bill for all appropriations must be submitted at least 28 days prior to the event

    **a.** The total amount broken down shall be included in the bill.

    **b.** Exceptions to this requirement may be waived due to administrative error made by the SGA with the consent of the Attorney General.

   **2.** The legislative bill must be considered and voted on prior to the event.

   **3.** The sponsoring Legislator and/or the organization must provide the required and requested information to ensure consideration and proper processing of the request. All standard corporate financial policies must be followed.

**F. Class II Appropriations**

   **1.** In order to foster campus programming, Class II organizations that meet the following requirements may be appropriated up to a total of $2,000 per semester, inclusive of the $4,000, free of the matching funds requirement outlined in Article VI, Section Two, Letter B, provided that the funds are used for on-campus programming.

   **2.** The Legislature shall not appropriate more than dollar for dollar total cash contributions provided by the organization, up to a total of $2,000 per academic year or $1,000 per semester for any event, provided that 40% of the funds raised by the organization are the result of direct fundraisers for matching funds.

   **3.** No Class II organization may be appropriated more than $6,000 for events during an academic year except under the circumstance explained in Article VI, Section One , Letter P , Number 2A

**G. Class III Appropriations**

   **1.** In order to foster greater on-campus programming, Class III organizations that meet the

following requirements may be appropriated up to a total of $1,000 per semester, inclusive of the $2,000, free of the matching funds requirements outlined in Article VI, Section Two, Letter B, provided that the funds are used for on-campus programming.

2. The Legislature shall not appropriate more than dollar for dollar total cash contributions provided by organization, up to a total of $1,000 for per academic year or $500 per semester for any event, provided that 40% of the funds raised by the organization are the result of direct fundraisers for matching funds.

3. No Class III organization may be appropriated more than $3,000 for events during an academic year except under the circumstance explained in  Article VI, Section One Two, Letter P A, Number 2A 7

## H. Class IV Appropriations

1   To be eligible for credit, the Class IV organization must be chartered for at least one month, excluding winter and summer breaks, and must be in good standing.

2   The Legislature shall not appropriate more than dollar for dollar total cash contributions provided by organization, up to a total of $500 for per academic year or $250 per semester for any event, provided that 40% of the funds raised by the organization are the result of direct fundraisers.

3   No Class IV organization may be appropriated more than $500 for events during an academic year.

## I.   Class II, III, and IV Office Supply Credit

1   A $50 supply credit for the purpose of providing promotional fliers to organizations.can be accessed through the Office Administrator.

## SECTION THREE:  STUDENT FEES

1. All students who are members of the SGA will be required to pay all SGA fees as established in the Constitution at the time designated for payment of tuition.

2. Students engaged in student teaching shall not be entitled to a fee rebate.

3. All member students withdrawing from college and entitled to a refund of SGA fees shall receive said refund according to the percentage refund schedule established by the college for refunds of tuition in similar situations.

## SECTION FOUR:  **CHECK SIGNING**

1. Any combination of two signatures (being those of the SGA President, and/or SGA Treasurer, and/or SGA Financial Advisor) may appear on SGA checks.

2. The SGA Financial Advisor should only sign an SGA check in the event that either the SGA President or SGA Treasurer is unavailable and the check needs to be signed immediately.

## SECTION FIVE: **OUTSTANDING CHECKS**

1. Any outstanding check that is older than one (1) full calendar year since the date it was written will be verified by the SGA Bookkeeper and voided for audit and bookkeeping purposes.

## ARTICLE SEVEN

## **STUDENT MEMBERS ON THE BOARD OF TRUSTEES OF MSU**

## SECTION ONE:  **ELIGIBILITY, ELECTION AND TERM OF OFFICE**

1. The SGA, in conjunction with the Office of Student Affairs, shall provide for the election of two student members to the college's Board of Trustees.  The time schedule and process for such elections shall be identical to that of the SGA officers.

2. During each election, a student will be elected at-large for a term of office of two years.  During the first year of office, the student shall serve in the position of Alternate Student.  During the second year, the individual shall serve in the position of Voting Student if qualified.

3. Each position during the term of office shall coincide with the annual organization of the board, the second week in September.

4. To be eligible for Alternate Student, an individual must:

   a. Be a United States citizen.

   b. Be 18 years of age or older.

   c. Be a regularly matriculated student.

   d. Be enrolled full time with at least 12 credits.

   e. Have completed no more than 80 credits at the end of the academic year of election.

   f. Pass at least freshman status with a 2.5 or higher cumulative average as certified by the registrar.

5. During the second year of the term of office, the Alternate Student, before becoming the Voting Student, shall be recertified as to the cumulative average, full time status, and citizenship as outlined in Article VII, Section One Number 4.

6. The student members must maintain the original eligibility requirements throughout the term of office.

7. Should a vacancy occur in the position of Alternate Student for the Board of Trustees, a special election will be held in accordance with Article IV, Section 1, Letter B. If a vacancy still exists after this special election is held, the SGA President shall appoint, with the advice and consent of the Legislature, a student who meets the outlined qualifications.  This appointee shall serve for the duration of the academic year they were sworn in and an additional year. This appointment and confirmation shall occur no later than the second regular meeting following the vacancy.

   a. It shall be the responsibility of the SGA Attorney General to carry out the special election, unless they themselves are running for the position.

8. Should a vacancy occur in the position of Voting Student on the Board, the Alternate Student shall assume the position following the same procedure in accordance with Article VII, Section 1, Number 7.

## SECTION TWO:  DUTIES AND RESPONSIBILITIES

1. The student members shall be entitled to full participation in all activities of the board except that they shall not participate in:

   a. Any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion or disciplining of any specific prospective officer or employee or current officer or employee employed or appointed by the board, unless all the individual employees or appointees whose rights could be adversely affected request in writing that the matter or matters be discussed at a public meeting.

   b. Any matter involving the purchase, lease acquisition or sale of real property with public funds, the setting of banking rates or investment of public funds, where it could adversely affect the public interest if discussion of these matters were disclosed.

    c.  Any pending or anticipated litigation in which the board is, or may become a party, where it could adversely affect the public interest if discussion of these matters were disclosed, or any matters falling within the attorney-client privilege, to the extent that confidentiality is required in order for the attorney to exercise their ethical duties as a lawyer.

2. The student members shall adhere to such standards of responsibility and confidentiality as are established by the State Board of Higher Education.

3. The student members shall establish effective means of communication with the student body as a whole and shall voice such information to the board and other concerned parties, including the SGA and the Graduate Student Council.

4. The voting student shall deliver a written copy of this report to the SGA President.

**SECTION THREE:  MEMBERS' RELATIONSHIP TO THE SGA**

1. The Voting Student may serve as an ex-officio member of the SGA President's Cabinet only with the consent of the SGA President.  The individual may not be a representative nor serve in any position on the Executive Branch.

2. The Alternate Student may serve as a representative should they choose or choose to sit on the SGA President's Cabinet upon consultation with the SGA President, but they shall not serve as President Pro Tempore of the Legislature.

3. The Voting and Alternate Representative(s) shall be subject to the same impeachment procedures as the SGA Executive Officers.

**SECTION FOUR:  OVERSIGHT AND RESTRICTION**

1. The provisions of this article are subject to oversight and restriction pursuant to the Laws of the State of New Jersey, the State Board of Higher Education, and the Board of Trustees of the University to the extent that each has authority under the enabling legislation, P.L. 1986, c. 136.

## ARTICLE EIGHT
## JUDICIAL BRANCH

### SECTION ONE:  GENERAL

1. The Judicial power of the SGA, Inc. shall be vested in one Supreme Court and in such inferior committees as the Legislature may from time to time ordain and establish.

2. With rule and neutrality, the judicial power will extend to all situations arising under the Constitution, these Statutes, all by-laws, and to all cases affecting SGA members, including all ordeals to which the SGA shall be a party, to controversies between two or more persons or organizations.

### SECTION TWO:  JUDICIAL BRANCH ELECTION PROCEDURES

1. Article Four of the SGA, Inc. Statutes shall dictate the procedures in administering the election of the Justices, along with the requirements set forth in the Constitution.

### SECTION THREE:  DUTIES OF THE JUSTICES

1. Communicate regularly with the undergraduate body and other branches of the SGA, Inc.

2. Promote a fair system of checks and balances in accordance with the Legislative and Executive Branches.

3. During the first full week of the semester the Justices shall establish a weekly meeting time, where they will conduct their weekly business.

4. Protect individual rights granted in the University Student Handbook's section on Student's Rights and Responsibilities and the SGA endorsed Students' Bill of Rights.

5. The Justices shall elect a Chief Justice by a plurality of the Justices at their first meeting of the Fall semester.  The Attorney General shall be present when the Justices elect a Chief Justice in order to monitor the vote.  The Chief Justice shall be approved in bill form by the Legislature in a written bill by the SGA President.

6. Enforce the financial mandate found in Article Six, Section One, Part B, sub-section 3 of the Statutes.

7. Every month, starting in October, correspond in meeting with the Treasurer, to review all financial business of the previous month, ensuring that all transactions are recorded and

accounted for.

8. To ensure constitutionality of SGA, Inc. following the order set forth in Article Two, Section Nine.

9. Review constitutions of Organizations, upon the passing of charterment or re-charterment bills by the Legislature. The judicial power can also review constitutions of Organizations, in the event of an Organizational constitutional discrepancy, upon written request.

10. Review the operations of SGA, Inc. along with the Government and Administration Committee and order mandates when violations are found.

11. Administer the Office of the Student Advocate as set forth in Article Eleven.

12. Have the power to issue subpoenas or summons for parties to appear before the court.

13. Have the power to issue injunctions for a set period of time.

14. At a minimum of once per month, attend the SGA General meeting from call to order through open forum.

15. Attend leadership and job training through the Office of Student Activities.

16. A Clerk shall be selected by plurality of the Justices from among the Associate Justices at the first weekly Justice meeting of the semester. The Clerk Justice shall record all the minutes and correspondence of the Branch. The Clerk must forward the Judicial minutes to the SGA Secretary once they are approved.

17. Justices not elected must be reappointed in Bill Form at the first meeting of each semester with a 2/3-majority vote of the legislature.

18. Shall be required to work a minimum of 3 office hours per week in accordance with Article III Section One Letter D.

19. Serve as judge in Judicial Court, unbiased to any party and implement disciplinary actions if the accused party is found guilty.

## SECTION FOUR:  <u>CHIEF JUSTICE</u>

1. Shall organize the business before each weekly meeting and preside over these meetings.

2. The Chief Justice shall not have a time conflict between the Judicial Branch meeting (set forth in Section Three, Part C) and any other extracurricular activity.

3. Shall represent the Judicial Branch to the Legislative and Executive Branches, and shall also be

responsible for reporting to the Legislature once per month and corresponding with the SGA President or an approved Presidential designee at a minimum of once per month.

4. In the case of a Disciplinary Committee formed, the Chief Justice shall act as neutral ex-officio to ensure evenhandedness in the procedures. Should a conflict of interest arise, the SGA President shall name a replacement.

5. Be responsible for filing all written correspondence to and from the Judicial Branch, plus minutes and notes from all meetings, as gathered by the Clerk.  This bill can be made available to the public.

6. May delegate their duties on to an Associate Justice for a limited amount of time.

7. Shall be responsible for keeping track of all Judicial Branch members' office hours during the school year.

**SECTION FIVE:  ABSENCES**

1. Each Associate Justice is granted two unexcused absence per semester from Judicial Branch Meetings, while the Chief Justice must be present at all Judicial Branch Meetings (See Article 8, Section 4, Number 2).

2. Associate Justices shall be granted one unexcused absence per semester from attending their required monthly SGA general meeting, while the Chief Justice is granted one unexcused absence from attending the required monthly SGA Legislative meetings each academic year.

3. Verification of illness, constituting an excused absence, shall be honored until excess excused absences provoke the Chief Justice, the Legislature or the SGA President to call for disciplinary action.

4. With approval of the SGA President, Attorney General, and Chief Justice, additional absences may be excused when necessary or deem appropriate.

**SECTION SIX:  JUDICIAL COURT**

1. Upon a possible violation of the Statutes which includes but is not limited to malfeasance, misfeasance, or nonfeasance of their duties, or partakes in actions unbecoming of an SGA member or chartered organization may be subject to sanction, censure or removal from office, the Prosecution must submit a written request to the Chief Justice within one week of the discovery of the incidents(s) or action(s) in question. The Justices may also issue subpoenas to

all parties involved in an affair of their jurisdiction.

    **a.** The Justices then have until the end of their next weekly meeting to notify, in writing, all parties involved, including the Attorney General and the Student Advocate and include the date of the pre-trial hearing which will be in concurrence with the weekly meetings of the Justices.

    **b.** The parties must then have two weeks to prepare a written report to support their respective cases, along with any evidence, by-laws, correspondence, and witness lists.

**2.** The procedure for the pre-trial shall be found in Article XII Section 1.

    **a.** The Chief Justice will be head of the pre-trial hearing.

    **b.** If the accused party is not present for the pre-trial hearing due to negligence, they have lost their privilege to go to trial and the disciplinary actions will be proposed by the Attorney General and approved by the plurality of the Justices.

**3.** At the end of the pre-trial hearing when no settlement has been reached the Court shall then choose a trial date in concurrence with the weekly meetings of the Justices.

**4.** The procedure for the trial shall follow those found in Article Eleven Section 3.

**5.** Before the close of the trial, the determination of guilt will be made by the Disciplinary Committee by unanimous decision, and the sentence must be determined by the presiding Justice. All finalized decisions shall be expressed verbally and in writing to all involved parties by the Chief Justice and shall be ultimately binding.

**6.** The Judicial Court must accept all appellate cases based on the criteria found in Article XII Section 4.


## SECTION SEVEN: THE OFFICE OF THE STUDENT ADVOCATE

**A. Requirements for the Office of the Student Advocate**

**1.** The Student Advocate shall be an undergraduate, and may also hold any position in the SGA with the exception of Executive President, Vice President, Treasurer, Secretary, Attorney General or Justice.

    **a.** If the application for Advocate doesn't hold a prior position a petition of 150 signatures of undergraduates must be completed.

2. The Student Advocate must have a Grade Point Average of at least 2.25.

3. The Student Advocate must have completed nine credits at Montclair State University or more when the oath of office is given.

4. Shall be required to work a minimum of three office hours per week in accordance with Article III Section One Letter F.

**B. The Creation of the Office of the Student Advocate**

1. The Office of the Student Advocate shall fall under the edict of the Judicial Branch, but shall not have the constitutional rights and privileges of the Judicial Branch.

2. At a time no later than the second meeting of the Judicial Branch, an appointment for the Office of the Student Advocate shall be named by a concurrence of the Justices.

3. The appointment shall be approved in bill form by the Legislature with a majority vote in favor.

4. Upon approval, the Chief Justice shall swear in the appointment in front of the Legislature.

**C. The Term of the Student Advocate**

1. The Student Advocate shall then be in office until the Justices removes them with a majority vote.

2. The term of the Advocate shall be for one academic year or until resignation or removal.

3. The Advocate can be removed by the Chief Justice but can be requested by order of a majority of the Legislature or an executive member of the SGA.

   a. The request does not have to be granted but shall be heard by the Justices in an open forum, in which the party asking for removal must make case to the panel of justices.

   b. If removal is not granted the Legislature may elect to remove with a 3/4 vote.

## ARTICLE NINE

## SGA ADVISORS DUTIES & RESPONSIBILITIES

### SECTION ONE: FINANCIAL ADVISOR

1. An administrator/Faculty member who is mutually acceptable to the SGA and MSU Co-sign checks, with adequate documentation and lead-time, except in an emergency or at the discretion of the SGA President (receives information on checks not co-signed).
2. Shall receive final budget.
3. Meets bi-weekly with the Treasurer.
4. Receives copies of all audits.
5. Has access to SGA financial information as approved by the SGA Treasurer.  The Attorney General will act upon any dispute, with appeal to the Legislature.
6. The Financial Advisor will receive an annual evaluation from the SGA Executive Board.  Any proposed change, by either the SGA or MSU in the selection of the Advisor, will be discussed and mutually agreed upon.

### SECTION TWO: ADMINISTRATIVE/FACULTY ADVISOR

1. An administrator/faculty who is mutually acceptable to the SGA and MSU (normally the Dean of Students).
2. Meets weekly with the SGA and monthly with the entire Executive Board.
3. Attends weekly meeting(s) of the Legislature (or sends a representative).
4. Meets once a year with the SGA Attorney General.
5. If the administrative advisor is the Dean of Students, another school official will handle any disciplinary case involving an SGA Executive Officer or Attorney General.
6. The Administrative Advisor will receive an annual evaluation from the SGA Executive Board.  Any proposed change, by either the SGA or MSU in the selection of the advisor, will be discussed and mutually agreed upon.

## ARTICLE TEN

## CODE OF ETHICS

**SECTION ONE:  PURPOSE**

The Student Government Association of Montclair State University Incorporated hereby adopts this Code of ethics  as the appropriate standard of conduct for all members of the SGA, including its chartered organizations, employees, advisors, and services.  The Code supersedes all previous codes of ethics promulgated for the SGA and shall apply to all members, as hereinafter defined.  The Code is adopted to help maintain public trust and confidence and to inform members of the standard or conduct expected of them.

**SECTION TWO:  STATE OF POLICY**

1. The SGA exists to serve the interests of the campus community. Therefore, it is necessary that all officials, whether elected, petitioned, or appointed; employees or advisors conduct themselves in a manner that fosters an atmosphere of respect, trust and confidence of the students they serve. Members must avoid any activity or association that is, or appears to be a violation of the public trust.

2. Appointed, petitioned, or elected members of the Legislative, Judicial, and Executive Branch must be in good standing with the University, determined by the Dean of Students Office.

3. Executive Board members of any subsidiary organization must be in good standing with the University, determined by the Dean of Students Office.

4. This Code of Conduct prohibits conflicts that are substantial and material or that may bring the SGA into disrepute. This Code is not intended to be applied in a vacuum. To that end, it attempts to balance public reception with the practical realities of government service. Under our democratic form of government, members should be drawn from the campus community and those who serve the SGA in an active role should enjoy a presumption of honest behavior and faithful performance in the discharge of their duties.  The standards set forth in this Code should be read so as to prohibit conflicts that are substantial and material or that brings the SGA into disrepute.

5. In any instance in which a member is not certain what the standard of conduct should be, the

member should consult the SGA Attorney General or a designee, who for purposes of this Code
shall serve as the SGA President's Ethics Officer.

## SECTION THREE:  DEFINITIONS

Unless a different meaning clearly appears from the context, the following terms shall have the
following meanings:

**"Code"** shall mean this Code of Ethics.

**"Employee"** shall mean a person who provides a service and receives compensation as
expressed in a contract.

**"Ethics Officer"** shall mean the SGA Attorney General or a designee.

**"Patron"** shall mean any corporation, partnership, firm, organization, association, individual
or person who gives gifts, favors, services, or financial support to the Student Government
Association or its subsidiaries.

**"Lobbyist"** shall mean any corporation, partnership, firm, organization, association,
individual, labor union, committee or person that employs, retains, designates, engages, or
otherwise uses the services of any legislative agent to influence legislation or regulation.
 "Lobbyist" shall include any person or entity acting on behalf of same.

**"Member"** shall mean any petitioned, elected, or appointed office of the SGA and it's
employees.

"**Organizations**" shall mean all chartered organization under the SGA.

**"Office or SGA President's Office"** shall mean the office of the SGA President including,
by way of example and not limitation, the Judicial Branch, and all appointed Offices of the
Presidential Cabinet.

**"Personal Funds"** shall mean funds of a natural person.  "Personal Funds" shall not include
funds that are loaned, advanced, or reimbursed to that person for the purpose of providing
anything of value to a member by a vendor, trustee, faculty/staff member, or lobbyist.

**"State"** shall mean the State of New Jersey.

**"Student Government Association"** shall mean the Student Government Association of
Montclair State University Incorporated, undergraduate fee-paying students, and all of its
chartered organizations.

**"University"** shall mean Montclair State University.

**"Vendor"** shall mean any corporation, partnership, firm, organization, association, individual or person who has contracted or bid to provide property, goods, or services directly to the SGA. "Vendor" shall include any person or entity acting on behalf of the same.

## SECTION FOUR: <u>CODE OF CONDUCT</u>

### A.   SOLICITATION AND RECEIPT OF GIFTS AND OTHER ITEMS

1. A member shall not solicit, receive, whether directly or indirectly, any compensation, reward, gift, favor, service, outside employment, officer of outside employment,, gratuities, meals, lodging, travel expenses or anything of monetary value from any, trustee, lobbyist, or faculty/staff member.

2. The SGA and its subsidiaries may accept gifts, favors, services, and financial support from Patrons so long as the gifts, favors, services, or financial support are approved unanimously by the Executive Board and the Ethics Officer of the SGA.

3. A member may accept gifts, favors, services, gratuities, lodging or travel expenses that are paid for by the University.

4. A member may accept, with approval of the Ethics Officer, reimbursement of actual expenses for travel, lodging and meals in connection with conferences, conventions, meetings, or retreats on matters within the scope of the member's official duties, for which reimbursement is not sought or received from the University.

5. A member shall report and turn over to the Ethics Officer any offer or receipt of any compensation, reward, gift, favor, service, outside employment, offer of outside employment, preferential loan, services at preferential rates, discounts, gratuities, meals, lodging, travel expenses or anything of monetary value from any vendor, trustee, lobbyist, or faculty/staff member, within five (5) business days of such offer or receipt.

6. The report shall be made on forms or in the manner prescribed by the Ethics Officer and shall describe:

   a.   The compensation, reward, gift, favor, service, outside employment, offer of outside employment, preferential loan, service at preferential rates, discount,

gratuity, meals, lodging, travel expenses or things of monetary value;

**b.** The identity of the vendor, trustee, lobbyist, or faculty/staff member;

**c.** The circumstances under which the gift, reward, favor, compensation, service, outside employment, offer of outside employment, preferential loan, service at preferential rates, discount, gratuity, meals, lodging, travel expenses or things of monetary value was offered;

**d.** The nature of the member's interaction or relationship with the donor;

**e.** Why the employee believes that acceptance of the compensation, reward, gift, favor, service, outside employment, preferential loan, service at preferential rates, discount, gratuity, meals, lodging, travel expenses or things of monetary value will not create an appearance of impropriety or otherwise violate this code.

**f.** A member is not required to notify the Ethics Liaison Officer of the receipt of unsolicited ordinary advertising material of nominal monetary value including, by way of example, pens, pencils, calendars and similar items.

**g.** For purposes of this Section IV of this Code, something will be considered to be indirectly solicited or received if it is delivered to someone other than the member in the name of the member and at the direction of the member.  Compensation, rewards, gifts, favors, services, outside employment, offers of outside employment, preferential loans, services at preferential rates, discounts, gratuities, meals, lodging, travel expenses or things of monetary value will not be considered to be received or indirectly solicited by the member if the member donates said things to the SGA, University, the State or a charity, provided that the donation is made in the name of the donor by the member.  A copy of the correspondence documenting such a donation by an employee shall, at the time of transmission to the organization, be provided to the Ethics Liaison Officer.

## B.  CONFLICTS AND APPEARANCES OF CONFLICTS

**1.** A member shall not have any direct or indirect interest, financial or otherwise, or engage in any business or transaction or professional activity that is in substantial conflict with the proper discharge of the member's duties in the public interest.

2.  A member shall not use or attempt to use the member's official position or information in the member's possession as a result of the member's official position to secure unwarranted privileges or advantages for the member or others.

3.  A member shall not act in the member's official capacity in any matter wherein the member has a direct or indirect personal financial interest that might reasonably be expected to impair the member's objectivity or independence of judgment.

4.  A member shall not either personally or through any person or entity undertake or execute any contract, agreement, sale, or purchase valued at $25.00 or more with any State, University, or SGA representative.

5.  A member shall not undertake any outside employment or service, whether compensated or not, which might reasonably be expected to impair the member's objectivity and independence of judgment in the exercise of the member's official duties.

6.  A member shall not accept any personal gift, favor, service, or other things of value under circumstances from which the member knows or has reason to believe that such personal gift, favor, service or other thing of value is offered with the intent to influence the member in the performance of the member's public duties or under circumstances from which it might reasonably inferred that such gift, service or other thing of value was given or offered for the purpose of influencing the member in the discharge of the member's official duties.

7.  A member shall not directly or indirectly solicit, receive or agree to receive any compensation, reward, favor, service, outside employment, preferential loan, service at preferential rates, discount, gratuity, meals, lodging, payment of travel expenses or anything of value from any source other than the SGA or the University for any service, advice, assistance or other matter related to the member's official duties.

8.  A member shall not knowingly act in any way that might reasonably be expected to create an impression or suspicion among the public having knowledge of their act that the member may be engaged in conduct inconsistent with this Code.

## C. USE OF INFORMATION, PROPERTY AND FUNDS, INCLUDING OFFICIAL STATIONERY

1. A member shall use the information, property and funds under their official control in accordance with prescribed procedures and not for personal gain or benefit.

2. A member shall not use or disclose information not generally available to members of the public, which information is obtained during the course of the member's work within the Office, other than such use or disclosure connected with the member's official duties.

3. In addition to all other official uses, the following uses of SGA stationary are generally permissible:

   a. To recommend a current or former member or colleague for another position, admission to a school, or program, etc; or

   b. To respond to inquiries from a private entity about a current or former member or colleague.

4. The following uses of SGA stationary are impermissible

   a. To promote a candidate for elective office;

   b. To endorse a vendor

   c. To express a personal opinion on a matter that is not related to one's official duties; or

   d. To secure a personal financial gain or pursue a vested interested.

## D. INVOLVEMENT AFTER LEAVING THE UNIVERSITY

After leaving the University, a member shall not represent, appear for, negotiate on behalf of or provide information or services not generally available to the public to anyone regarding any cause, proceeding, application or other matter with respect to which the member shall have made any investigation, rendered any ruling given any opinion, or been otherwise substantially and directly involved at any time during the course of their enrollment. This prohibition also applies to professional corporations, and to all partners, officers or employees of such partnerships, firms, or corporations.

## E. CAMPAIGN WORK

1. A member shall not engage in campaign work on SGA time. "Campaign work" is work that both: (a) does not reasonably and primarily fulfill the member's official duties; and (b) materially contributes to a person's change of election or reelection to office or the

prospects of a candidate.

**2.** A member may engage in campaign work voluntarily whenever the member is not obligated to perform official duties.

**3.** A member shall not use the property of the SGA President's Office for campaign work.

**SECTION FIVE:  OTHER STATUTES AND RULES**

In addition to the Code of Conduct, a member is subject to all other applicable statutes, rules and executive orders.

## ARTICLE ELEVEN
## DISCIPLINARY PROCEDURES

### SECTION 1: PRE-TRIAL HEARING

**A.** The purpose of the pre-trial hearing is for the accused and the prosecution to reach an agreement prior to bringing the matter to court. In order to reach an agreement the:

    **1.** Prosecution must withdraw their accusation against the accused due to a falsified testimony; or

    **2.** The accused pleads guilty and reaches a settlement with the prosecution. The settlement needs to be suggested by the prosecution and ultimately approved by the Chief Justice.

**B.** The Attorney General shall serve as the Prosecutor. In the event that the Attorney General is the accused, the President Pro Tempore shall serve as the prosecutor.

**C.** Student Advocate shall serve to defend the accused. The accused may also choose to represent themselves.

**D.** During the pre-trial hearing all evidence, witness(es), Statutes, by-laws must be shared with both parties to ensure that there is transparency. If any other information is found after the pre-trial hearing it must be shared with the Chief Justice, Prosecutor, accused, and Student Advocate if applicable.

### SECTION TWO: DISCIPLINARY COMMITTEE

**A.** Selection of Disciplinary Committee Members:

    **1.** No later than the third meeting of each semester, the SGA shall enter into closed session for the purpose of selecting Disciplinary Committee Members.

    **2.** These members will hear all cases scheduled on the day of Judicial Court which shall be held in concurrence with the weekly meetings of the Justices.

        **a.** In the event that there are no trials occurring on the scheduled day. The selected committee members must be notified by the Judicial Clerk that they do not have to serve on the disciplinary committee.

    **3.** The committee members shall consist of  seven randomly selected Legislators selected by the Chief Justice. The Chief Justice shall also draw five alternate Legislators Representatives.

        **a.** Serving on Judicial Court will count towards Legislative office hours for the week.

    **4.** If either the accused or the prosecutor believes that any Legislator drawn may be biased in these

proceedings, this individual may exercise a refusal at the start of the Trial.

5. Each side will be permitted three refusals.

6. If any Legislator, who is selected, demonstrates sufficient cause, may excuse themselves from these proceedings.  Sufficient cause is to be determined by the Chief Justice.

## SECTION THREE: TRIAL HEARING

A. When the court is called to order the charges against the accused shall be read.

1. The accused shall enter a plea of either guilty or not guilty.

   a. If the accused enters a guilty plea, the Justice will then deliberate for the purpose of deriving a sentence.

   b. If the accused enters a plea of not guilty, then the procedure shall continue as specified below.

2. The Attorney General shall present their arguments for the charges. They shall have the burden of proof by presenting credible evidence beyond a reasonable doubt.

3. The Accused may then present a defense against the charges.

4. Both sides may call factual witness or present evidence in their arguments in accordance with number 1 above.

5. The prosecution and defense shall both be permitted to cross-examine the witnesses.

6. Following the questions, the prosecution and defense shall be permitted a final closing argument.

7. The committee shall only consider evidence and arguments presented in the Trial. All Hearings shall take place in one session and may not adjourn or recess to collect more evidence, find witnesses, or any other purpose related to the current proceeding.

8. The committee will than enter into closed session to deliberate and determine the guilt of the accused.

   a. The only individuals permitted to enter closed session are those in the committee.

9. The Disciplinary Committee shall have the power to determine the guilt or innocence of the accused. The Justice shall have the power to determine whatever sentence they deem appropriate, including permanent expulsion from the SGA Legislature, Executive, Judicial Branches or the Board of Trustees Alternate.

10. Except for the committee's deliberation, the entire proceedings shall be open to the public and tape-recorded.

11. The Disciplinary Committee's and Justice's decisions shall be binding to all parties and shall be final.

12. The Center for Student Involvement shall be informed if the sanction affects the organization's ability to book space for events.

13. Any action taken under the auspices of this section shall not preclude the occurrence of civil or criminal action.

## SECTION FOUR: APPELLATE HEARING

A.  A request for appeal must be made in writing to the Chief Justice no later than five days after the trial's end.

    1. An appeal shall be granted if the majority of the justices feel that there has been a procedural error with the valid cause they may hold an appellate hearing.

    2. The majority of the justices feel as though the ruling was unconstitutional.

    3. In the case of a decharterment of an organization by the SGA Legislature.

B. Procedure for Appellate Hearing

    1. The representing parties remain the same.

    2. All of the justices will make a decision by majority vote if in fact a procedural error was made or the ruling was unconstitutional.

    3. All decisions made by the justices are final.

## SECTION FIVE: DISCIPLINARY GUIDELINES FOR CLASS ORGANIZATIONS

A. The following are maximum sanctions for their respective Statute violations. If there are not guidelines for a Statute violation, then it is up to the discretion of the Justice residing to create a proper sanction for the organization, depending on the frequency and magnitude of the violation. The Justice cannot sentence an organization to decharterment, but they can request that the Legislature does so.

    1. Class Director Meetings

        a.  Failure to attend meeting or not supply an excuse in writing will result in:

            i.   1st offense: warning letter.

          **ii.** 2nd offense: 10% of budget/funds taken away.

          **iii.** 3rd offense: all budget/funds frozen.

**2.** General Body Meeting Minutes

    **a.** Failure to comply with said policies indicated by the absence of minutes shall result in:

          **i.** 1st offense: warning letter.

          **ii.** 2nd offense: 10% of budget/funds taken away.

          **iii.** 3rd offense: all budget/funds frozen.

**3.** Advertising Policies

    **a.** Failure to comply with said policies indicated shall result in:

          **i.** 1ST offense: warning letter.

          **ii.** 2nd offense: loss of posting privileges for fourteen days.

          **iii.** 3rd offense: loss of advertising privileges for thirty days.

**4.** Financial Policy Violations

    **a.** All SGA Financial Policies must be adhered to fully. In minor cases these breaches in policy will be allowed to pass, at the discretion of the Executive Branch Treasurer and no action is needed.

    **b.** Flagrant or repetitive violations will not be tolerated and are subject to penalty at the discretion of the Attorney General and Executive Treasurer.